**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS and KEVIN LYNCH,<br><br>             Plaintiff,<br><br>          v.<br><br>MAESTRA MUSIC, INC.;<br>ARTS IGNITE INC. d/b/a Musicians United for Social Equity (MUSE); and WICKED LLC,<br><br>             Defendants. | Case No.: 26-cv-04645 |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARTS IGNITE'S**
**MOTION TO DISMISS THE COMPLAINT**

---

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

Ryan C. Chapoteau
Casey Katz Pearlman

ATTORNEYS FOR DEFENDANT ARTS
IGNITE INC.

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT .......................................................................................................................... 5

I.    Plaintiffs' Claims Under Section 1981 Fail as a Matter of Law Because No Contractual Relationship Was Implicated ................................................................................................ 5

    A.    Plaintiffs' Section 1981 Claim Fails as a Privacy Policy Is Not a Contract ....................... 6

    B.    Plaintiff Lynch's 1981 Claim Fails as the Music Director Experience Was Not an Employment Opportunity.................................................................................................... 8

    C.    Plaintiffs Ancillary Failure to Hire Argument is Misplaced............................................ 11

II.    Plaintiffs' NYSHRL and NYCHRL Claims Fail Because Arts Ignite Is Not an Employment Agency and the Music Director Experience Was Not an Employment Opportunity ......................................................................................................................... 12

    A.    Arts Ignite Is Not an Employment Agency under the NYSHRL or NYCHRL................ 12

    B.    The Music Director Experience Was Not an Employment Opportunity Capable of Creating a Contractual Relationship .............................................................................. 15

    C.    Plaintiffs' Discriminatory-Advertising Claims Fail under Both the NYSHRL and NYCHRL ...................................................................................................................... 17

III.    Plaintiffs' New York Civil Rights Law Claim Fails as a Matter of Law ......................... 18

CONCLUSION..................................................................................................................... 18

**Cases**

Adam v. Obama for Am.,
210 F. Supp. 3d 979 (N.D. Ill. 2016) ....................................................................8, 9

Areu v. Fox News Network, LLC,
No. 20-CV-8678 (RA), 2021 U.S. Dist. LEXIS 171332 (S.D.N.Y. Sept. 9,
2021) ...............................................................................................................15, 16, 17

Ashcroft v. Iqbal,
556 U.S. 662 (2009)...................................................................................4, 5, 11

Atl. Recording Corp. v. Project Playlist, Inc.,
603 F. Supp. 2d 690 (S.D.N.Y. 2009)........................................................................7

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007).........................................................................................4, 5

Chavannes v. Bronx Parent Hous. Network, Inc.,
No. 21-cv-5060 (JGK), 2022 U.S. Dist. LEXIS 163258 (S.D.N.Y. Sept. 9,
2022) .......................................................................................................................13

Daniels v. Pipefitters' Ass'n Local Union No. 597,
945 F.2d 906 (7th Cir. 1991) ...................................................................................11

Domino's Pizza, Inc. v. McDonald,
546 U.S. 470 (2006)......................................................................................................5

Felder v. United States Tennis Ass'n,
27 F.4th 834 (2d Cir. 2022) .....................................................................................13

Ginx, Inc. v. Soho Alliance,
720 F. Supp. 2d 342 (S.D.N.Y. 2010).........................................................................5

Glaser v. Upright Citizens Brigade, LLC
377  F. Supp. 3d 387 (S.D.N.Y. 2019).................................................................10, 11

Gundogdu v. LinkedIn Corp.,
No. 23-12706, 2024 U.S. App. LEXIS 8797 (11th Cir. April 12, 2024)..........14, 15

Hollander v. Sears, Roebuck & Co.,
450 F. Supp. 496 (D. Conn. 1978)........................................................................9, 10

Hyman v. Cornell Univ.,
834 F. Supp. 2d 77 (N.D.N.Y. 2011)........................................................................18

Lihuan Wang v. Phoenix Satellite TV US, Inc.,
976 F. Supp. 2d 527 (S.D.N.Y. 2013)...................................................................15

Marvelli v. Chaps Cmty. Health Ctr.,
193 F. Supp. 2d 636 (E.D.N.Y. 2002) ....................................................................9

Murphy v. ERA United Realty,
251 A.D.2d 469 (2d Dept 1998) ...........................................................................15

Orozco v. Fresh Direct, LLC,
No. 15-CV-8226 (VEC), 2016 U.S. Dist. LEXIS 133296 (S.D.N.Y. Sept. 27,
2016) ........................................................................................................................7

Pastor v. P'ship for Children's Rights,
No. 10-cv-5167 (CBA)(LB), 2012 U.S. Dist. LEXIS 140917 (E.D.N.Y. Sept.
27, 2012) ................................................................................................................17

Perry v. NYSARC, Inc.,
424 Fed. Appx. 23 (2d Cir. 2011)........................................................................14

Stoner v. Young Concert Artists, Inc.,
No. 11 Civ. 7279 (LAP), 2012 U.S. Dist. LEXIS 141892 (S.D.N.Y. Sept. 25,
2012) ......................................................................................................................13

Stoner v. Young Concert Artists, Inc.,
626 Fed. Appx. 293 (2d Cir. 2015).......................................................................13

TufAmerica, Inc. v. Diamond,
968 F. Supp. 2d 588 (S.D.N.Y. 2013)...................................................................14

Wang v. Phx Satellite Television US, Inc.,
976 F. Supp. 2d 527 (S.D.N.Y. 2013)...................................................................16

Williams v. City of New York,
No. 03 Civ. 5342 (RWS), 2005 U.S. Dist. LEXIS 26143 (S.D.N.Y. Nov. 1,
2005) ........................................................................................................................4

Woodson v. California,
No. 2:15-cv-01206-MCE-CKD, 2016 U.S. Dist. LEXIS 153573 (E.D. Ca.
Nov. 4, 2016) ........................................................................................................10

**Statutes**

42 U.S.C. § 1981.............................................................................................1, 2, 5, 6, 8, 9

N.Y.C. Admin. Law § 8-100 *et seq* ...............................................................................12, 17

N.Y. Exec. Law § 296.....................................................................................................12, 17

New York Civil Rights Law ..................................................................................18

**Other Authorities**

https://museonline.org..................................................................................7, 13

https://www.merriam-webster.com/dictionary/procure ...............................................12

https://www.merriam-webster.com/dictionary/undertake ...........................................12

22 NY Jur 2d, Contracts § 9.........................................................................................6

Restatement of Contracts § 24 .......................................................................................6

Defendant Arts Ignite Inc. d/b/a Musicians United for Social Equity ("Defendant" or "Arts Ignite" or "MUSE") submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint of Plaintiffs Kevin Lynch ("Lynch") and American Alliance for Equal Rights ("AAER") (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs' claims against Arts Ignite are legally baseless and should be dismissed. Plaintiffs' Complaint sets forth seven causes of action against Arts Ignite brought under 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and New York Civil Rights Law § 40-c.

Arts Ignite is a small seven-employee not-for-profit organization seeking to encourage youth to discover the joy and power of making art. In an effort to advance a crusade, Plaintiffs attempt to mischaracterize a short-term educational experience and shadowing program as an employment opportunity, a common privacy policy as a contract, and Arts Ignite as an employment agency. Plaintiffs' characterizations, however, are fatally flawed. As detailed herein, Plaintiffs' claims are legally deficient, insufficiently pled, and should be dismissed.

Plaintiffs' theories of liability under Section 1981 rest on purported contractual relationships that, plainly, do not exist. Indeed, Plaintiffs' Complaint does not identify *any* legitimate contractual relationship or prospective contractual relationship between Plaintiffs and Arts Ignite that would support the application of Section 1981. Grasping at straws, Plaintiffs seek to argue that the Privacy Policy embedded in Arts Ignite's website, through its MUSE program, creates a contractual relationship with MUSE Directory members. This Privacy Policy, however, is not a contract – it is a public notice. A policy describing how data submitted to a website may

be collected and used does not create the contractual relationship required to sustain a Section 1981 claim.

Plaintiffs' assertion that Plaintiff Lynch sought to contract with Arts Ignite by submitting an application for the Music Director Experience is also not compatible with a claim under Section 1981 because the Music Director Experience was not an employment opportunity, and Plaintiffs' Complaint does not provide sufficient allegations supporting their contention that it was. Indeed, by Plaintiffs' own explanation of the position, the Music Director Experience was a three-week shadowing opportunity (Compl. ¶ 35) designed to provide exposure to the skills needed to successfully be a Music Director on Broadway. Just because the selected participant would merely be in the room and temporarily observe rehearsals does not create an employment relationship. Dispositively, Plaintiffs' own allegations highlight that the Music Director Experience was a mentorship opportunity, which is precisely how it is described on the Arts Ignite website, and not employment. A relationship created through mentorship does not lay the foundation for a Section 1981 claim. Accordingly, such claims must be dismissed.

Plaintiffs' NYSHRL and NYCHRL claims fare no better. While the Complaint characterizes Arts Ignite as an "employment agency," the factual allegations in the Complaint do not support that label. The Complaint fails to plausibly allege Arts Ignite recruits, places, hires, refers, or procures employees for employers. Instead, Plaintiffs' NYSHRL and NYCHRL claims rest purely on Plaintiffs' own self-serving label that Arts Ignite is an employment agency. This label, however, is an unfounded legal conclusion not supported by allegations in the Complaint. Moreover, as with the Section 1981 claim, Plaintiff Lynch's claim that the Music Director Experience was an "employment opportunity" or "internship" fails because the allegations in the

Complaint do not support those explicitly defined terms within the NYSHRL and NYCHRL. This contention, therefore, must be rejected.

Finally, a New York Civil Rights Law claim is meritless where a plaintiff's NYSHRL claim fails. As stated above, and detailed more fully below, Plaintiffs' NYSHRL claims are subject to dismissal. Accordingly, Plaintiffs' Civil Rights Law claim simultaneously fails to survive.

Simply put, the entirety of Plaintiffs' claims against Arts Ignite are insufficiently pled and legally meritless on their face. Accordingly, this Court should dismiss all claims against Arts Ignite with prejudice.

## **STATEMENT OF FACTS[1]**

Arts Ignite "is a Manhattan-based nonprofit" and "MUSE is an initiative of Arts Ignite." Complaint ("Compl.") ¶ 8. In June 2023, Defendant Maestra announced that it was "teaming up" with Arts Ignite to sponsor a "Music Director Experience" with Wicked. Id. ¶ 14. The experience was described as a "'three-week intensive' for 'aspiring music directors looking to make a big leap.'" Id. ¶ 15. The selected participant would have the opportunity to attend rehearsals and performances of Wicked, study the musical score, and obtain "'practical playing and conducting experience by working with the Music Director one-on-one.'" Id. In essence, the individual would be an "apprentice shadowing the conductor". Id. ¶ 35. The selected participant would also receive a weekly stipend. Id. While the application for the Music Director Experience was available to MUSE and Maestra directory members, it was similarly made available so non-members could submit an application. Id. ¶¶ 16; 20.

Plaintiff Lynch, an aspiring musical director with experience as a music director for regional and community theaters, saw the advertisement for the Music Director Experience and,

---

[1] The following statement of facts is taken directly from Plaintiffs' Complaint. The facts alleged in the Complaint are accepted as true for the purpose of this motion only.

without being a member of Arts Ignite (or Maestra), decided to submit an application. Compl. ¶ 20. When Plaintiff Lynch opened the Google form to apply for the Music Director Experience, he was directed to pages where he could register for the MUSE and/or Maestra directories. Id. ¶ 23. On June 28, 2023, Plaintiff Lynch registered for a MUSE profile on the MUSE Directory (the "Directory"). Id. ¶¶ 23, 27. After completing his registration, the Directory did not immediately generate a link to his profile. Id. ¶ 27.  So, Plaintiff Lynch submitted his application for the Music Director Experience through the profile he made with Defendant Maestra. Id. ¶ 28. Plaintiff Lynch emailed MUSE to request the status of his profile in MUSE's Directory but did not hear back. Id. ¶ 31. Nevertheless, Plaintiff was able to submit an application for the Music Director Experience. Id. ¶¶ 20, 28.

In August 2023, it was announced that the Music Director Experience went to another individual and not Plaintiff Lynch. Compl. ¶ 32.  Plaintiff Lynch alleges in self-serving speculation that he continues to seek music-related work in the New York theater industry and that his career would benefit from inclusion in the Directory. Id. ¶¶ 36, 91.

## **LEGAL STANDARD**

On a motion to dismiss under FRCP 12(b)(6), the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  Williams v. City of New York, No. 03 Civ. 5342 (RWS), 2005 U.S. Dist. LEXIS 26143, at *4-5 (S.D.N.Y. Nov. 1, 2005).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Indeed, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to a presumption of truth. Id. Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 678 (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The factual allegations must "possess enough heft to show that the pleader is entitled to relief." Id. at 557. Unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 570; Iqbal, 556 U.S. at 680.

## ARGUMENT

**I. Plaintiffs' Claims Under Section 1981 Fail as a Matter of Law Because No Contractual Relationship Was Implicated**

In order for a plaintiff to state a claim under Section 1981, a plaintiff must show: "(1) that he/she is a member of a racial minority; (2) that the defendant intended to discriminate against the plaintiff on the basis of race; and (3) that the plaintiff was subjected to discrimination concerning one or more of the activities enumerated in § 1981." Ginx, Inc. v. Soho Alliance, 720 F. Supp. 2d 342, 357 (S.D.N.Y. 2010). Where, as here, the enumerated activity is the right to make and enforce contracts, a plaintiff must sufficiently allege the existence of a contractual relationship with the defendant. Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 475-76 (2006); Ginx, Inc., 720 F. Supp. 2d at 357 ("[a]ny 1981 claim…must initially identify an impaired 'contractual relationship'…under which the plaintiff has rights."). Section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship," but only where "the plaintiff has or would have rights under the existing or proposed contractual relationship." Domino's Pizza, 546

U.S. at 476. Plaintiffs have failed to allege the existence of a contractual relationship between Plaintiffs and Arts Ignite. Accordingly, Plaintiffs' Section 1981 claims must be dismissed.

### A. Plaintiffs' Section 1981 Claim Fails as a Privacy Policy Is Not a Contract

Plaintiffs do not allege any legitimate contract between Plaintiffs and Arts Ignite. Instead, Plaintiffs attempt to manufacture a contractual relationship by asserting that "[a] job seeker enters a contract when he joins MUSE directory" because "[a]ccording to MUSE's privacy policy, when a directory applicant 'submit[s] information to or through the Site,' he is 'consenting to the collection, processing, and retention of [his] information as described in this Privacy Policy.'" Compl. ¶ 57. These allegations, however, do not plead the type of contractual relationship contemplated by Section 1981.

To plead contract formation in New York, a plaintiff must allege: "offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." 22 NY Jur 2d, Contracts § 9. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it". Restatement of Contracts § 24. The Privacy Policy identified by Plaintiffs as creating a contract is not a manifestation of a bargained-for exchange between parties. Instead, it just identifies Arts Ignite's rights with respect to information provided to the general public and anyone who may choose to access the MUSE website. Plaintiffs falsely imply that agreement to the privacy policy is required as part of an individual's application to join the Directory. That is not the case. The Privacy Policy, located at the bottom of MUSE's website – regardless of which website page a person visits – is entirely untethered to an application to join the Directory. The terms of the Privacy Policy apply to anyone accessing any portion of the website, not just the Directory. Simply, the Privacy Policy

on the MUSE website was not a contract for the Music Director Experience, nor was it a contract for an opportunity to be considered for the Music Director Experience.

Even if the Privacy Policy were interpreted as a contract, at most, it would concern the use of MUSE's website generally, not access to the Directory specifically. The Privacy Policy states: "This Privacy Policy explains the privacy practices governing information collected through museonline.org (the "Site") which is owned and operated by MUSE." *See* https://museonline.org/privacy-policy/.[2] Thus, by its own terms, the Privacy Policy concerns information collected through the website as a whole, not just the Directory. In fact, the Privacy Policy does not even reference the Directory. The MUSE website has numerous uses, separate and apart from the Directory, which are available to anyone who accesses museonline.org, regardless of their race.

Moreover, if the Privacy Policy "agreement" identified by Plaintiffs was considered a contract, it would be enforceable by anyone who accesses MUSE's website, museonline.org, regardless of their race, whether they are a member of the Directory, and the purpose for which they visited the website. Given the unfettered access any individual with internet has to the MUSE website, Arts Ignite does not and cannot rely on a user's race to interfere their right to "make" or "enforce" the Privacy Policy agreement since the "agreement" can be "made" and/or "enforced" by anyone who accesses the website. On these grounds alone, dismissal is appropriate because Plaintiffs cannot establish that Arts Ignite interfered with anyone's access – including AAER's and/or its members – to MUSE's website and its Privacy Policy.

---

[2] Because Plaintiffs rely on MUSE's website to assert the claims against Arts Ignite, the Court can consider the totality of the website in consideration of the instant motion to dismiss. Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009) (holding that court may consider website on a motion to dismiss when the complaint incorporates it by reference (citations omitted)); Orozco v. Fresh Direct, LLC, No. 15-CV-8226 (VEC), 2016 U.S. Dist. LEXIS 133296, at *14-15 (S.D.N.Y. Sept. 27, 2016) ("the website is not only incorporated by reference in the Complaint but is at the Center of Plaintiffs' allegations, so the Court may consider the website in its totality as it existed during the relevant time period in resolving Defendants' motion to dismiss.").

### B. Plaintiff Lynch's 1981 Claim Fails as the Music Director Experience Was Not an Employment Opportunity

Plaintiff Lynch's individual claim under Section 1981 also fails because the "Music Director Experience", as described by Plaintiffs themselves was a mere brief shadowing opportunity akin to an externship or a networking opportunity, not an employment opportunity. In fact, the application for the Music Director Experience described the program as a "3-week intensive shadowing engagement". MUSE/Maestra MD Experience Application. Moreover, on MUSE's website, the Music Director Experience is listed as a Mentorship Opportunity. Like the Privacy Policy, this "shadowing engagement" does not create the type of contractual relationship contemplated by Section 1981. Indeed, where a complaint fails to allege an exchange of value, as it fails to do here, a claim under Section 1981 fails.

Adam v. Obama for Am., 210 F. Supp. 3d 979 (N.D. Ill. 2016) is instructive on this point. In Adam, the plaintiff was an unpaid intern who sought to assert a claim under Section 1981 by arguing that a contractual relationship existed between her and the defendant because she "perform[ed] services in exchange for use of a laptop computer and access to 'the internship itself." Id. at 985. The court concluded, however, that no such contractual relationship existed. In so holding, the court explained, "'the formation of a contract'—with exceptions not relevant here—is not simply a mere 'agreement . . . of mutual assent,' but is a special kind of agreement consisting of a 'bargain . . . to exchange promises or to exchange a promise for a performance or to exchange performances.'" Id. (internal citation omitted). The court explained that the plaintiff's contention that her "agree[ment] to perform work for [the defendant] OFA in exchange for the prestige of the position" was insufficient to establish the exchange required for the formation of a contractual relationship. The court continued, "for 'the internship itself' to be consideration for Adams's performance of the internship work, OFA must have been *induced* to offer Adam an internship by

some valuable skill or characteristic Adam possessed that she would have used to benefit OFA through her willingness to work." Id. (emphasis in original) "[S]ince OFA would have filled (or not filled) the position regardless of Adam's interest, OFA did not give up anything in exchange for Adam's performance, and Adam cannot be said to have 'exchanged' her performance with OFA in return for the internship opportunity." As such, the court held, no contractual relationship was formed.

Similar to plaintiff's internship in Adam, the Music Director Experience would not have formed the basis of a contractual relationship between Plaintiffs and Arts Ignite because there would have been no exchange of promises amongst the parties. The Music Director Experience – a shadowing opportunity – did not require, or even ask, the selected participant to provide any particular skill or characteristic to Defendant Wicked. Instead, the selected participant would merely be observing the rehearsals and productions. The selected participant was not expected to offer anything to Wicked in exchange for just being present, and the only party benefiting from the Music Director Experience would be the selected participant. As the court in Adam held, this "internship itself" type of approach to contract formation is not viable for a Section 1981 claim.

Hollander v. Sears, Roebuck & Co., 450 F. Supp. 496 (D. Conn. 1978) is similarly instructive.[3] There, the plaintiff, a white male, alleged that he was excluded from consideration from the defendant's internship program "for Minority Students" because of his race. The internship program was an eleven-week program, and provided $130 per week for its participants. Id. at 498. In declining to characterize the internship program as creating a contractual relationship, the court stated that the interns "were not paid by Sears to fill regular positions as stock boys, inventory-takers, cashiers, salesmen, clerks, or in the complaint department. They were paid to

---

[3] Hollander was similarly upheld in recent decisions from 2002 and 2016. See, Adam, 210 F. Supp. 3d 979; Marvelli v. Chaps Cmty. Health Ctr., 193 F. Supp. 2d 636 (E.D.N.Y. 2002).

come in and observe the performance of such jobs, to try them out for short periods, and to be taught the relationships among various positions." Id. at 504. The internship's brochure described the program as an opportunity "'to learn what business and specifically, retailing is all about.'" Id. While the interns received a weekly payment, this payment made no difference in the rejection of the identification of the position as a contractual relationship between the selected participants and Sears: "the object of the payment to an intern was not to have him work as an employee in carrying on Sears' retail business; rather, it was payment to secure his attention to the manner in which Sears' regular employees worked." Id. at 505.

Just like the summer internship program in Hollander, the Music Director Experience was an opportunity to learn. The selected participant was not asked to provide any services to Wicked, and the Complaint does not allege otherwise. Instead, the Music Director Experience provided the selected participant with the opportunity to "observe the performance" of what it meant to put together a Broadway production. Plaintiffs' attempt to establish a contractual relationship by alleging that the participant received a "weekly stipend" and that the selected participant later obtained other jobs does not change this reality. As demonstrated with the internship in Hollander, a mere stipend does not convert a three-week educational program into employment, and alleged downstream professional benefits do not transform such observational learning program into a job offer. See also, Woodson v. California, No. 2:15-cv-01206-MCE-CKD, 2016 U.S. Dist. LEXIS 153573, at *18 (E.D. Ca. Nov. 4, 2016) (plaintiff, a "foster grandparent" who received an hourly stipend, was "not entitled to Section 1981 protection because Plaintiff is not an employee"); Glaser v. Upright Citizens Brigade, LLC, 377 F. Supp. 3d 387 (S.D.N.Y. 2019) (declining to find an employment relationship because "the Second Circuit has held that the networking opportunities that came along with volunteering in a local professional organization were incidental to that

10

volunteering" thus, the Court held "that the opportunities for professional growth that came along with Glaser's stage time at a local comedy theater were incidental to his performances.").

As set forth above, Plaintiffs have failed to establish the existence, or even the potential existence, of a contractual relationship with Arts Ignite. As such, Plaintiffs' Section 1981 claims should be dismissed.

### C. Plaintiffs Ancillary Failure to Hire Argument is Misplaced

To the extent Plaintiffs seek to assert an alternative theory of liability based on a purported failure to hire, such claim also fails. Plaintiffs seemingly rely on Daniels v. Pipefitters' Ass'n Local Union No. 597, 945 F.2d 906, 915 (7th Cir. 1991) to allege "MUSE's failure to refer Lynch for employment and other contractual opportunities violates § 1981." Compl. ¶ 59. Plaintiffs' reliance is misplaced. Daniels involved a union hiring hall that controlled and actively referred workers to specific employers pursuant to a collective-bargaining agreement—a far cry from a nonprofit directory that offers members "networking events," "mentorship opportunities," and "access to [a] Job Board." See infra § IV.A. The Complaint does not allege that MUSE has ever referred any Directory member to any specific employer or job. Nor does it allege that MUSE's failure to add Lynch to the Directory deprived him of any identified employment contractual opportunity with any particular employer. To the contrary, Lynch's own allegations establish only, at best, that MUSE never responded to his registration inquiry. Compl. ¶ 31. That silence is patently insufficient to survive a motion to dismiss, as it does not establish anything more than "sheer possibility," which is not actionable. Iqbal, 556 U.S. at 678.

11

**II. Plaintiffs' NYSHRL and NYCHRL Claims Fail Because Arts Ignite Is Not an Employment Agency and the Music Director Experience Was Not an Employment Opportunity**

Plaintiffs NYSHRL and NYCHRL claims have the same fatal defects that make them subject to dismissal. Plaintiffs assert that Arts Ignite violated the NYSHRL and NYCHRL based on two theories: first, by asserting that Arts Ignite is an "employment agency" as defined under the statutes, and second, by alleging that the Music Director Experience was an employment opportunity. More specifically, Plaintiffs allege that Arts Ignite is an employment agency that discriminated against Lynch by "declining to list him in its employment directory" (Compl. ¶ 68) and by "barr[ing] Lynch from the Music Director Experience." Compl. ¶ 75. However, Plaintiffs' conclusory assertions are insufficient. As detailed herein, neither of Plaintiffs' theories of liability under the NYSHRL and NYCHRL are plausible. Accordingly, the NYSHRL and NYCHRL claims must be dismissed.

**A. Arts Ignite Is Not an Employment Agency under the NYSHRL or NYCHRL**

Both the NYSHRL and the NYCHRL have adopted the same definition of "employment agency" which is "any person undertaking to procure employees or opportunities to work." N.Y. Exec. Law § 296(2); N.Y.C. Admin. Law § 8-102. The Merriam-Webster Dictionary defines "undertake" as "to take upon oneself: set about". https://www.merriam-webster.com/dictionary/undertake. The term "procure" is defined as "to get possession of (something): to obtain (something) by particular care and effort." https://www.merriam-webster.com/dictionary/procure. Thus, "undertaking to procure employees or opportunities to

work" requires an affirmative step on behalf of Arts Ignite to obtain potential employment opportunities. This is not what Arts Ignite does, nor do Plaintiffs allege as much.[4]

Indeed, Plaintiffs' sole allegations in support of their proposition that Arts Ignite is an employment agency is that "MUSE undertake[s] to procure opportunities for musicians to work in the New York theater industry." Compl. ¶ 66. This "conclusory allegation that Defendant is an 'employment agency' for the purposes of these statutes is part and parcel of the sort of 'formulaic recitation of the elements of a cause of action [that] will not do.'" Stoner v. Young Concert Artists, Inc., No. 11 Civ. 7279 (LAP), 2012 U.S. Dist. LEXIS 141892, at *23 (S.D.N.Y. Sept. 25, 2012) rev'd on other grounds, 626 Fed. Appx. 293 (2d Cir. 2015). Plaintiffs' mere reliance on *ipse dixit* logic is not enough to plausibly state a claim.

To the extent Plaintiffs assert that the allegation "MUSE runs the MUSE directory, an employment directory that matches musicians with suitable work in the theater industry" (Compl. ¶ 67) is sufficient to support their current pleading burden that Arts Ignite is an "employment agency," they are mistaken. Dispositively, this assertion is belied by the very information on MUSE's website that Plaintiffs seek to challenge. A member of the Directory receives access to a variety of benefits. These benefits include networking events, Zoom panels, mentorship opportunities, scholarship opportunities, fellowship opportunities, "access to MUSE Job Board", virtual events, and discounts/perks for music software and products. https://museonline.org/join/. In no way does it mention that MUSE is sourcing jobs for its Directory members, simply because

---

[4] To the extent Plaintiff seeks to assert that Arts Ignite was a joint employer with Defendant Maestra and/or Defendant Wicked, such argument should be given short shrift. In order to establish a joint employer relationship, a plaintiff must establish that the alleged "joint employer" had "significant control" over the employee, including "control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance and payroll." Chavannes v. Bronx Parent Hous. Network, Inc., No. 21-cv-5060 (JGK), 2022 U.S. Dist. LEXIS 163258, at *12 (S.D.N.Y. Sept. 9, 2022) citing Felder v. United States Tennis Ass'n, 27 F.4th 834 (2d Cir. 2022). There are no allegations in the Complaint that Arts Ignite had "significant control" over the Music Director Experience such that any employment relationship – single or joint employer – existed. Accordingly, any argument regarding a joint employer theory fails.

it is not. This Court should not rely upon Plaintiffs' self-serving, conclusory description of the Directory as the catalyst for defining MUSE as an "employment agency" when it is explicitly contradicted by the very evidence Plaintiffs refer to for such support. See Perry v. NYSARC, Inc., 424 Fed. Appx. 23, 25 (2d Cir. 2011) (when assessing a motion to dismiss, "the court must generally accept as true all of the factual assertions in the complaint. However, there is a narrow exception to this rule for factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice."); TufAmerica, Inc. v. Diamond, 968 F. Supp. 2d 588, (S.D.N.Y. 2013) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.") (internal citation omitted).

In Gundogdu v. LinkedIn Corp., No. 23-12706, 2024 U.S. App. LEXIS 8797 (11th Cir. April 12, 2024), a court addressed this very issue. There, the plaintiff was an independent contractor who operated a consulting company and used LinkedIn to look for job opportunities, keep in touch with potential clients and former coworkers, and promote her consulting business. She maintained both a personal LinkedIn account and a business LinkedIn account, the latter used to create brand awareness, attract clients, and hire employees for her clients. After plaintiff posted content opposing the COVID-19 vaccine, LinkedIn suspended her accounts, which she characterized as an expression of her religious and conservative views. Similar to Plaintiffs' allegations in the instant Complaint, in support of her claim, the plaintiff in Gundogdu alleged that LinkedIn was an "employment agency" because it "provid[es] job-search [functionality] on its platform." In sharp disagreement with the plaintiff, the Eleventh Circuit affirmed the District Court's decision, determining that access to LinkedIn's job board does not make the company an "employment agency". The Gundogdu court reasoned that "merely providing users with access to

14

employment opportunities was not a significant degree of engagement in employment-related activities."[5] Id. at *5. Here, contrary to the allegations in the Complaint, the MUSE website Plaintiffs cite to directly refute that MUSE "matches musicians with suitable work." (Compl. ¶ 67). Accordingly, Plaintiffs have failed to sufficiently allege that Arts Ignite is an employment agency, making Plaintiffs' NYSHRL and NYCHRL claims subject to dismissal.

### B. The Music Director Experience Was Not an Employment Opportunity Capable of Creating a Contractual Relationship

Just as the Music Director Experience does not qualify as an employment opportunity under Section 1981, the Music Director Experience also does not qualify as an employment opportunity under the NYSHRL or the NYCHRL. The NYSHRL governs discrimination claims "in the traditional employer-employee relationship." Murphy v. ERA United Realty, 251 A.D.2d 469, 470 (2d Dept 1998). Similarly, under the plain terms of NYCHRL, "the provision's coverage only extends to employees". Lihuan Wang v. Phoenix Satellite TV US, Inc., 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013). Although neither the NYSHRL nor the NYCHRL independently defines the term "employee," courts apply the same threshold inquiry used under Title VII: a plaintiff must plausibly allege that she was "hired" by the putative employer, which requires "remuneration in some form for her work" that conveys a "substantial benefit" — not one that is "merely incidental" or a "necessary incident of the work performed," and not "vague benefits" such as "networking opportunities," "widespread publicity[,] or name recognition." Areu v. Fox News Network, LLC, No. 20-CV-8678, 2021 U.S. Dist. LEXIS 171332, at *23–24 (S.D.N.Y. Sept. 9, 2021). The NYSHRL applies this standard because "the standards for recovery under [the NYSHRL] . . . are

---

[5] Defendant recognizes that Gundogdu v. LinkedIn Corp. was brought under Title VII, not the NYSHRL or NYCHRL. However, the same conclusion is warranted under the NYSHRL and NYCHRL because similar threshold inquiries are conducted under all three statutes. Areu v. Fox News Network, LLC, No. 20-CV-8678, 2021 U.S. Dist. LEXIS 171332, at *27 (S.D.N.Y. Sept. 9, 2021).

the same as the federal standards under Title VII." Id. The NYCHRL likewise imposes "the threshold remuneration condition that is essential for an individual to qualify as an 'employee'" under both Title VII and the NYSHRL. Id. at *27.

In Areu, the Court held that travel expenses, accommodations, hair and makeup services, and other collateral perks the plaintiff received in connection with her unpaid, on-air appearances were "insufficiently substantial to qualify as remuneration" and were instead "merely . . . incidental to the activity performed," compelling dismissal of her discrimination claims under Title VII, the NYSHRL, and the NYCHRL. Areu, 2021 U.S. Dist. LEXIS 171332, at *50, n.6. Here, the Music Director Experience and the travel stipend the recipient received falls woefully short of the arrangement already rejected in Areu. Even accepting Plaintiffs' assertions that the Music Director Experience would have opened doors for Plaintiff lynch, like the "field test" audition process used in Areu in lieu of "traditional" hiring, the Music Director Experience still was not an offer of employment that subjects Arts Ignite to liability under the NYSHRL or NYCHRL. A "pipeline program" of a "three-week intensive shadowing engagement" for "aspiring" and "emerging" music directors "looking to make a big leap," is not an offer of employment. Compl. ¶ 15. Indeed, the participant's role was purely observational and educational – attending rehearsals and performances, studying the score, and "gaining practical playing and conducting experience by working with the Music Director one-on-one." (Id.). It has already been determined that such actions are not assigned job duties under an employer's direction and control to create the required employer-employee relationship for Plaintiff claims to survive dismissal. As the Areu Court noted, an employer "logically cannot discriminate against a person in the 'conditions or privileges of employment' if no employment relationship exists." Areu, 2021 U.S. Dist. LEXIS 171332, at *23 (quoting Wang v. Phx Satellite Television US, Inc., 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013)).

Moreover, the weekly travel stipend the Complaint identifies in an attempt to demonstrate remuneration, is precisely the kind of incidental, non-substantial payment that <u>Areu</u> held as insufficient as the stipend was tied to a fixed, three-week shadowing period rather than an ongoing employment relationship. Like the travel and grooming benefits deemed inadequate in <u>Areu</u>, the stipend provided was for participation in a training experience rather than the performance of employment duties. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u>, <u>Pastor v. P'ship for Children's Rights</u>, 10-cv-5167 (CBA)(LB), 2012 U.S. Dist. LEXIS 140917 (E.D.N.Y. Sept. 27, 2012) (volunteers were not considered employees because "reimbursement for Continuing Legal Education ('CLE') courses and multiple hours of classes and training in the field of education law . . . are not the type of substantial job-related benefits that give rise to an employment relationship.").

Plaintiffs have not plausibly alleged that the Music Director Experience conferred the kind of substantial, employment-like remuneration and control that the statutes require and the position does not constitute "employment" under either the NYSHRL or the NYCHRL. Therefore, this Court should dismiss Plaintiffs' NYSHRL and NYCHRL claims.

### C. Plaintiffs' Discriminatory-Advertising Claims Fail under Both the NYSHRL and NYCHRL

In addition to their employment-agency and employment-opportunity theories, Plaintiffs appear to assert that Arts Ignite violated the NYSHRL and NYCHRL by circulating advertisements for the Music Director Experience that purportedly "expressed an intent to discriminate against white males like Lynch." Compl. ¶ 72. These claims fail for the same fundamental reasons Plaintiff's other NYSHRL and NYCHRL claims fail: Arts Ignite is neither an "employer" nor an "employment agency" within the meaning of either statute, and, as stated above, the Music Director Experience does not constitute "prospective employment" as contemplated under either statute. N.Y. Exec. Law § 296(1)(d); N.Y.C. Admin. Code § 8-107(1)(d).

### III.    Plaintiffs' New York Civil Rights Law Claim Fails as a Matter of Law

Section 40-c of the New York State Civil Rights Law provides that "[n]o person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability . . . be subjected to any discrimination in his or her civil rights, or to any harassment[.]" Where a defendant violates the NYSHRL, they are subject to the civil penalties of §40-c. Thus, "[f]acts sufficient to sustain a cause of action under [NYSHRL] will support a cause of action under section 40-c of the Civil Rights Law." Hyman v. Cornell Univ., 834 F. Supp. 2d 77, 84-85 (N.D.N.Y. 2011) (internal citation omitted). On the other hand, "[w]here a plaintiff cannot support a claim under the Human Rights Law, the defendant will not be exposed to liability under § 40-c." Id. at 85. As detailed above, Plaintiffs' NYSHRL claims are dismissible. As such, Plaintiffs' Civil Rights Law claim must also be dismissed.

### CONCLUSION

For the foregoing reasons, the Court should grant Defendant Arts Ignite's motion to dismiss the Complaint in its entirety and with prejudice pursuant to Rule 12(b)(6), together with such other and further relief as the Court deems just and proper.

<div style="margin-left:50%">

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

</div>

Dated: July 30, 2026                    By:    */s/ Ryan C. Chapoteau*
      New York, New York                              Ryan C. Chapoteau
                                                       Casey Katz Pearlman

<div style="margin-left:50%">

ATTORNEYS FOR DEFENDANT ARTS IGNITE INC.

</div>

## <u>Certification of Compliance with Word Count</u>

I hereby certify that the foregoing Memorandum of Law in Support of Defendant Arts Ignite's Motion to Dismiss Plaintiff's Complaint complies with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. The Memorandum of Law contains 5,677 words as calculated by the word processing system used to prepare the document, excluding the case caption, table of contents, table of authorities, and signature block.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

Dated:  July 30, 2026
     New York, New York

By: */s/ Ryan C. Chapoteau*
Ryan C. Chapoteau
Casey Katz Pearlman

ATTORNEYS FOR DEFENDANT ARTS IGNITE, INC.