**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN ALLIANCE FOR EQUAL RIGHTS and KEVIN LYNCH,

Plaintiff,

v.

MAESTRA MUSIC, INC.;
ARTS IGNITE INC. d/b/a Musicians United for Social Equity (MUSE); and WICKED LLC,

Defendants.

Case No.: 26-cv-04645

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARTS IGNITE'S MOTION TO DISMISS THE AMENDED COMPLAINT**

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

Ryan C. Chapoteau
Casey Katz Pearlman

ATTORNEYS FOR DEFENDANT ARTS IGNITE INC.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 4

LEGAL STANDARD ..... 5

ARGUMENT ..... 6

I. Plaintiffs' Claims Under Section 1981 Fail as a Matter of Law Because No Contractual Relationship Was Implicated ..... 6

A. Plaintiffs' Section 1981 Claim Fails as a Privacy Policy Is Not a Contract ..... 6

B. Plaintiff Lynch's 1981 Claim Fails as the Music Director Experience Was Not an Employment Opportunity or an Internship Capable of Creating a Contractual Relationship 8

C. Plaintiffs Ancillary Failure to Hire Argument is Misplaced ..... 12

D. The Music Director Experience Was Not a Contest ..... 13

II. Plaintiff Lynch's Title VII Claim Fails ..... 14

A. Plaintiff's EEOC Charge Was Untimely ..... 14

B. Arts Ignite Is Not an Employment Agency Under Title VII ..... 15

III. Plaintiffs' NYSHRL and NYCHRL Claims Fail Because Arts Ignite Is Not an Employment Agency and the Music Director Experience Was Not an Employment Opportunity or Internship ..... 17

A. Arts Ignite Is Not an Employment Agency under the NYSHRL or NYCHRL ..... 18

B. The Music Director Experience Was Not an Employment Opportunity or Internship Capable of Creating a Contractual Relationship ..... 20

C. Plaintiffs' Discriminatory-Advertising Claims Fail under Both the NYSHRL and NYCHRL ..... 23

IV. Plaintiffs' New York Civil Rights Law Claim Fails as a Matter of Law ..... 23

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

AAER v. Fearless Fund,
103 F.4th 765 (11th Cir. 2024) ....................13, 14

Adam v. Obama for Am.,
210 F. Supp. 3d 979 (N.D. Ill. 2016) ....................9, 10, 14

Areu v. Fox News Network, LLC,
No. 20-CV-8678, 2021 U.S. Dist. LEXIS 171332 (S.D.N.Y. Sept. 9, 2021)....................20, 21, 22

Ashcroft v. Iqbal,
556 U.S. 662 (2009)....................5, 6, 12, 13

Atl. Recording Corp. v. Project Playlist, Inc.,
603 F. Supp. 2d 690 (S.D.N.Y. 2009)....................8

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)....................5, 6

Bernard v. Care Design N.Y.,
22-cv-1527 (LJL), 2022 U.S. Dist. LEXIS 175326 (S.D.N.Y. Sept. 27, 2022) ....................15

Brush v. S.F. Newspaper Printing Co.,
315 F. Supp. 577 (N.D. Cal 1970) aff'd 469 F.2d 89 (9th Cir. 1972) ....................15, 16

Brush v. S.F. Newspaper Printing Co.,
469 F.2d 89 (9th Cir. 1972) ....................15, 16

Chavannes v. Bronx Parent Hous. Network, Inc.,
No. 21-cv-5060 (JGK), 2022 U.S. Dist. LEXIS 163258 (S.D.N.Y. Sept. 9, 2022) ....................18

Daniels v. Pipefitters' Ass'n Local Union No. 597,
945 F.2d 906 (7th Cir. 1991) ....................12

Domino's Pizza, Inc. v. McDonald,
546 U.S. 470 (2006)....................6, 12

Felder v. United States Tennis Ass'n,
27 F.4th 834 (2d Cir. 2022) ....................18

Ginx, Inc. v. Soho Alliance,
720 F. Supp. 2d 342 (S.D.N.Y. 2010)....................6

Girard v. Int'l Ass'n of Approved Basketball Offs.,
No. 3:18-cv-02049 (MPS), 2020 U.S. Dist. LEXIS 269378 (D. Conn. Feb. 27, 2020) ....15

Girard v. Int'l Ass'n of Approved Basketball Offs.,
840 Fed. Appx. 635 (2d Cir. 2021) ....15

Glaser v. Upright Citizens Brigade, LLC,
377 F. Supp. 3d 387 (S.D.N.Y. 2019) ....11, 12

Greenfield v. Field Enterprises, Inc.,
No. 71 C 2075, 1972 U.S. Dist. LEXIS 15304 (N.D. Ill. Feb. 1, 1972) ....15

Gundogdu v. LinkedIn Corp.,
No. 23-12706, 2024 U.S. App. LEXIS 8797 (11th Cir. April 12, 2024) ....16, 17, 20

Hollander v. Sears, Roebuck & Co.,
450 F. Supp. 496 (D. Conn. 1978) ....10, 11

Hyman v. Cornell Univ.,
834 F. Supp. 2d 77 (N.D.N.Y. 2011) ....23

Jennifer Shin v. NBC Universal Media, LLC,
23-cv-10996 (LJL), 2025 U.S. Dist. LEXIS 22561 (S.D.N.Y. Feb. 7, 2025) ....15

Lihuan Wang v. Phoenix Satellite TV US, Inc.,
976 F. Supp. 2d 527 (S.D.N.Y. 2013) ....20

Marvelli v. Chaps Cmty. Health Ctr.,
193 F. Supp. 2d 636 (E.D.N.Y. 2002) ....10

Mix v. Del. & Hudson Ry. Co.,
345 F.3d 82 (2d Cir. 2003) ....14

Murphy v. ERA United Realty,
251 A.D.2d 469 (2d Dept 1998) ....20

Orozco v. Fresh Direct, LLC,
No. 15-CV-8226 (VEC), 2016 U.S. Dist. LEXIS 133296 (S.D.N.Y. Sept. 27, 2016) ....8

Pastor v. P'ship for Children's Rights,
10-cv-5167 (CBA)(LB), 2012 U.S. Dist. LEXIS 140917 (E.D.N.Y. Sept. 27, 2012) ....22

Perry v. NYSARC, Inc.,
424 Fed. Appx. 23 (2d Cir. 2011) ....19

Salvat v. Constr. Res. Corp.,
17-CV-4002 (VEC), 2017 U.S. Dist. LEXIS 201831 (S.D.N.Y. Dec. 7, 2017)......................15

Scaglione v. Chappaqua Cent. Sch. Dist.,
209 F. Supp. 2d 311 (S.D.N.Y. 2002)..........................................................................15

Stoner v. Young Concert Artists, Inc.,
No. 11 Civ. 7279 (LAP), 2012 U.S. Dist. LEXIS 141892 (S.D.N.Y. Sept. 25, 2012) ..........................................................................................................18

Stoner v. Young Concert Artists, Inc.,
626 Fed. Appx. 293 (2d Cir. 2015)..............................................................................18

TufAmerica, Inc. v. Diamond,
968 F. Supp. 2d 588 (S.D.N.Y. 2013)..........................................................................19

Williams v. City of New York,
No. 03 Civ. 5342 (RWS), 2005 U.S. Dist. LEXIS 26143 (S.D.N.Y. Nov. 1, 2005) ............................................................................................................5

Woodson v. California,
No. 2:15-cv-01206-MCE-CKD, 2016 U.S. Dist. LEXIS 153573 (E.D. Ca. Nov. 4, 2016) .........................................................................................................11

**Statutes**

42 U.S.C.S. §2000e *et seq*........................................................................14, 15

42 U.S.C. § 1981 ..........................................................................................1, 6, 12

42 U.S.C. § 2000e(c)..........................................................................................15

N.Y.C. Admin. Law § 8-100 *et seq* .............................................................18, 22, 23

N.Y. Exec. Law § 296.......................................................................................18, 22, 23

New York Civil Rights Law § 40-c ...........................................................................23

**Rules**

Federal Rule of Evidence 201 ....................................................................................15

Federal Rules of Civil Procedure Rule 12(b)(6) ................................................1, 5, 24

**Other Authorities**

https://museonline.org..........................................................................................8, 19

https://www.merriam-webster.com/dictionary/procure ...............................................18

https://www.merriam-webster.com/dictionary/undertake ....................................................18

22 NY Jur 2d, Contracts § 9......................................................................................................7

Restatement of Contracts § 24 ..................................................................................................7

Defendant Arts Ignite Inc. d/b/a Musicians United for Social Equity ("Defendant" or "Arts Ignite" or "MUSE") submits this Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint of Plaintiffs Kevin Lynch ("Lynch") and American Alliance for Equal Rights ("AAER") (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint fares no better than their original Complaint as, once again, the claims asserted against Arts Ignite in the Amended Complaint are legally baseless. Indeed, Plaintiffs' revised allegations do not salvage Plaintiffs' deficient pleadings and, accordingly, Plaintiffs' claims against Arts Ignite must be dismissed.

Arts Ignite is a small seven-employee not-for-profit organization seeking to encourage youth to discover the joy and power of making art. In an effort to advance a crusade, Plaintiffs attempt to mischaracterize a short-term educational experience and shadowing program as an employment opportunity or contest, a common privacy policy as a contract, and Arts Ignite as an employment agency. Plaintiffs' characterizations, however, are fatally flawed. As detailed herein, Plaintiffs' claims are legally deficient, insufficiently pled, and should be dismissed.

Plaintiffs' Amended Complaint now sets forth eight causes of action against Arts Ignite brought under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and New York Civil Rights Law § 40-c.

As an initial matter, Plaintiffs' theories of liability under Section 1981 rest on purported contractual relationships that, plainly, do not exist. Indeed, Plaintiffs' Amended Complaint does not identify a single legitimate contractual relationship or prospective contractual relationship between Plaintiffs and Arts Ignite that would support the application of Section 1981. Grasping at

straws, Plaintiffs seek to argue that the Privacy Policy embedded in Arts Ignite's website, through its MUSE program, creates a contractual relationship with MUSE Directory members. This Privacy Policy, however, is not a contract – it is a public notice. A policy describing how data submitted to a website may be collected and used does not create the contractual relationship required to sustain a Section 1981 claim. In yet another belabored attempt to identify a contractual relationship, Plaintiffs assert – in a conclusory manner – that the Music Director Experience was a "contest". However, the Music Director Experience was in no way a contest as there was no prize separate from the experience itself, and there were no published rules and criteria governing the application and decision-making process which come with regular contest participation.

Plaintiffs' assertion that Plaintiff Lynch sought to contract with Arts Ignite by submitting an application for the Music Director Experience is also not compatible with a claim under Section 1981 because the Music Director Experience was not an employment opportunity, internship, or contest and Plaintiffs' Amended Complaint does not provide sufficient allegations supporting their contention that it was. Indeed, the Music Director Experience was a three-week opportunity designed to provide exposure to the skills needed to successfully be a Music Director on Broadway. Just because the selected participant would merely be in the room and temporarily observe rehearsals does not create an employment relationship. Dispositively, Plaintiffs' own allegations highlight that the Music Director Experience was a mentorship opportunity, which is precisely how it is described on the Arts Ignite website, and not employment. A relationship created through mentorship does not lay the foundation for a Section 1981 claim. Accordingly, such claims must be dismissed.

Plaintiff Lynch's newly-pleaded Title VII claim against Arts Ignite is fatally flawed for the simple reason that it is time-barred. As detailed below, Plaintiff Lynch failed to file a Charge of

Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300-days of the last allegedly discriminatory action. Plaintiff Lynch's failure to file a timely charge requires dismissal of his Title VII claim against Arts Ignite. Nevertheless, Arts Ignite does not qualify as an employment agency under Title VII. Thus, even if Plaintiff Lynch filed a timely charge (which he did not), he would still not have a viable Title VII claim.

Plaintiffs' NYSHRL and NYCHRL claims fare no better. While the Amended Complaint characterizes Arts Ignite as an "employment agency," the factual allegations in the Amended Complaint do not support that label. The Complaint fails to plausibly allege Arts Ignite recruits, places, hires, refers, or procures employees for employers. Instead, Plaintiffs' NYSHRL and NYCHRL claims rest purely on Plaintiffs' own self-serving label that Arts Ignite is an employment agency. This label, however, is an unfounded legal conclusion not supported by allegations in the Amended Complaint. Moreover, as with the Section 1981 claim, Plaintiff Lynch's claim that the Music Director Experience was an "employment opportunity" or "internship" fails because the allegations in the Amended Complaint do not support those explicitly defined terms within the NYSHRL and NYCHRL. This contention, therefore, must be rejected.

Finally, a New York Civil Rights Law claim is meritless where a plaintiff's NYSHRL claim fails. As stated above, and detailed more fully below, Plaintiffs' NYSHRL claims are subject to dismissal. Accordingly, Plaintiffs' Civil Rights Law claim simultaneously fails to survive.

Simply put, the entirety of Plaintiffs' claims against Arts Ignite are insufficiently pled and legally meritless on their face. Accordingly, this Court should dismiss all claims against Arts Ignite with prejudice.

## STATEMENT OF FACTS[1]

Arts Ignite "is a Manhattan-based nonprofit" and "MUSE is an initiative of Arts Ignite." Amended Complaint ("AC") ¶ 8. In June 2023, Defendant Maestra announced that it was "teaming up" with Arts Ignite to organize a "Music Director Experience" with Wicked. Id. ¶ 14. The experience was described as a "'three-week intensive' for 'aspiring music directors looking to make a big leap.'" Id. ¶ 15. The selected participant would have the opportunity to attend rehearsals and performances of Wicked, study the musical score, and obtain "'practical playing and conducting experience by working with the Music Director one-on-one.'" Id. ¶ 16. The selected participant would also receive a weekly stipend. Id. While the application for the Music Director Experience was available to MUSE and Maestra directory members, it was similarly made available so non-members could submit an application. Id. ¶¶ 17-19. The opportunity was advertised in multiple places and the application was submitted through a publicly accessible Google form. Id. ¶¶ 18-19, 23.

Plaintiff Lynch, an aspiring musical director with experience as a music director for regional and community theaters, saw the advertisement for the Music Director Experience and, without being a member of Arts Ignite (or Maestra), decided to submit an application. AC ¶ 24. When Plaintiff Lynch opened the Google form to apply for the Music Director Experience, he was directed to pages where he could register for the MUSE and/or Maestra directories. Id. ¶ 27. On June 28, 2023, Plaintiff Lynch registered for a MUSE profile on the MUSE Directory (the "Directory"). Id. ¶¶ 27, 30. After completing his registration, the Directory did not immediately generate a link to his profile. Id. ¶ 31. So, Plaintiff Lynch submitted his application for the Music Director Experience through the profile he made with Defendant Maestra. Id. ¶ 32. Plaintiff Lynch

---

[1] The following statement of facts is taken directly from Plaintiffs' Amended Complaint. The facts alleged in the Amended Complaint are accepted as true for the purpose of this motion only.

emailed MUSE to request the status of his profile in MUSE's Directory but did not hear back. Id. ¶ 35. Nevertheless, Plaintiff was able to submit an application for the Music Director Experience. Id. ¶¶ 31.

In August 2023, it was announced that the Music Director Experience went to another individual and not Plaintiff Lynch. AC ¶ 36. Plaintiff Lynch alleges in self-serving speculation that if he had been a woman of color, he would have been selected for the Music Director Experience. AC ¶ 37. Plaintiff Lynch further alleges that he continues to seek music-related work in the New York theater industry and that his career would benefit from inclusion in the Directory. Id. ¶¶ 46, 51.

## LEGAL STANDARD

On a motion to dismiss under FRCP 12(b)(6), the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Williams v. City of New York, No. 03 Civ. 5342 (RWS), 2005 U.S. Dist. LEXIS 26143, at *4-5 (S.D.N.Y. Nov. 1, 2005). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Indeed, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to a presumption of truth. Id. Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The factual allegations must "possess enough heft to show that the

pleader is entitled to relief." Id. at 557. Unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 570; Iqbal, 556 U.S. at 680.

## ARGUMENT

### I. Plaintiffs' Claims Under Section 1981 Fail as a Matter of Law Because No Contractual Relationship Was Implicated

In order for a plaintiff to state a claim under Section 1981, a plaintiff must show: "(1) that he/she is a member of a racial minority; (2) that the defendant intended to discriminate against the plaintiff on the basis of race; and (3) that the plaintiff was subjected to discrimination concerning one or more of the activities enumerated in § 1981." Ginx, Inc. v. Soho Alliance, 720 F. Supp. 2d 342, 357 (S.D.N.Y. 2010). Where, as here, the enumerated activity is the right to make and enforce contracts, a plaintiff must sufficiently allege the existence of a contractual relationship with the defendant. Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 475-76 (2006); Ginx, Inc., 720 F. Supp. 2d at 357 ("[a]ny 1981 claim…must initially identify an impaired 'contractual relationship'…under which the plaintiff has rights."). Section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship," but only where "the plaintiff has or would have rights under the existing or proposed contractual relationship." Domino's Pizza, 546 U.S. at 476. Plaintiffs have failed to allege the existence of a contractual relationship between Plaintiffs and Arts Ignite. Accordingly, Plaintiffs' Section 1981 claims must be dismissed.

#### A. Plaintiffs' Section 1981 Claim Fails as a Privacy Policy Is Not a Contract

Plaintiffs do not allege any legitimate contract between Plaintiffs and Arts Ignite. Instead, Plaintiffs attempt to manufacture a contractual relationship by asserting that "[a] job seeker enters a contract when he joins MUSE's directory" because "[a]ccording to MUSE's privacy policy, when

a directory applicant 'submit[s] information to or through the Site,' he is 'consenting to the collection, processing, and retention of [his] information as described in this Privacy Policy.'" AC ¶ 75. Plaintiffs further allege that "[b]y refusing to let Lynch join its directory, MUSE is refusing to contract with Lynch. It is, at minimum, refusing to give Lynch the equal benefit of any contract he entered when he visited the website and applied to join the directory." Id. ¶ 76. These allegations, however, do not plead the type of contractual relationship contemplated by Section 1981.

To plead contract formation in New York, a plaintiff must allege: "offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." 22 NY Jur 2d, Contracts § 9. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it". Restatement of Contracts § 24. The Privacy Policy identified by Plaintiffs as creating a contract is not a manifestation of a bargained-for exchange between parties. Instead, it just identifies Arts Ignite's rights with respect to information provided to the general public and anyone who may choose to access the MUSE website. Plaintiffs falsely imply that agreement to the privacy policy is required as part of an individual's application to join the Directory. That is not the case. The Privacy Policy, located at the bottom of MUSE's website – regardless of which website page a person visits – is entirely untethered to an application to join the Directory. The terms of the Privacy Policy apply to anyone accessing any portion of the website, not just the Directory. Simply, the Privacy Policy on the MUSE website was not a contract for the Music Director Experience, nor was it a contract for an opportunity to be considered for the Music Director Experience.

Even if the Privacy Policy were interpreted as a contract, at most, it would concern the use of MUSE's website generally, not access to the Directory specifically. The Privacy Policy states:

"This Privacy Policy explains the privacy practices governing information collected through museonline.org (the "Site") which is owned and operated by MUSE." *See* https://museonline.org/privacy-policy/.[2] Thus, by its own terms, the Privacy Policy concerns information collected through the website as a whole, not just the Directory. In fact, the Privacy Policy does not even reference the Directory or application to the Directory. The MUSE website has numerous uses, separate and apart from the Directory, which are available to anyone who accesses museonline.org, regardless of their race.

Moreover, if the Privacy Policy "agreement" identified by Plaintiffs was considered a contract, it would be enforceable by anyone who accesses MUSE's website, museonline.org, regardless of their race, whether they are a member of the Directory, and the purpose for which they visited the website. Given the unfettered access any individual with internet has to the MUSE website, Arts Ignite does not and cannot rely on a user's race to interfere with their right to "make" or "enforce" the Privacy Policy agreement since the "agreement" can be "made" and/or "enforced" by anyone who accesses the website. On these grounds alone, dismissal is appropriate because Plaintiffs cannot establish that Arts Ignite interfered with anyone's access – including AAER's and/or its members – to MUSE's website and its Privacy Policy.

**B. Plaintiff Lynch's 1981 Claim Fails as the Music Director Experience Was Not an Employment Opportunity or an Internship Capable of Creating a Contractual Relationship**

Plaintiff Lynch's individual claim under Section 1981 also fails because the "Music Director Experience", was a mere brief shadowing opportunity akin to a networking opportunity,

---

[2] Because Plaintiffs rely on MUSE's website to assert the claims against Arts Ignite, the Court can consider the totality of the website in consideration of the instant motion to dismiss. Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009) (holding that court may consider website on a motion to dismiss when the complaint incorporates it by reference (citations omitted)); Orozco v. Fresh Direct, LLC, No. 15-CV-8226 (VEC), 2016 U.S. Dist. LEXIS 133296, at *14-15 (S.D.N.Y. Sept. 27, 2016) ("the website is not only incorporated by reference in the Complaint but is at the Center of Plaintiffs' allegations, so the Court may consider the website in its totality as it existed during the relevant time period in resolving Defendants' motion to dismiss.").

not an employment opportunity or internship. In fact, the application for the Music Director Experience described the program as a "3-week intensive shadowing engagement". MUSE/Maestra MD Experience Application. Moreover, on MUSE's website, the Music Director Experience is listed as a "Mentorship Opportunity". Like the Privacy Policy, this "shadowing engagement" does not create the type of contractual relationship contemplated by Section 1981. Indeed, where a complaint fails to allege an exchange of value, as it fails to do here, a claim under Section 1981 fails.

Adam v. Obama for Am., 210 F. Supp. 3d 979 (N.D. Ill. 2016) is instructive on this point. In Adam, the plaintiff was an unpaid intern who sought to assert a claim under Section 1981 by arguing that a contractual relationship existed between her and the defendant because she "perform[ed] services in exchange for use of a laptop computer and access to 'the internship itself." Id. at 985. The court concluded, however, that no such contractual relationship existed. In so holding, the court explained, "'the formation of a contract'—with exceptions not relevant here—is not simply a mere 'agreement . . . of mutual assent,' but is a special kind of agreement consisting of a 'bargain . . . to exchange promises or to exchange a promise for a performance or to exchange performances.'" Id. (internal citation omitted). The court explained that the plaintiff's contention that her "agree[ment] to perform work for [the defendant] OFA in exchange for the prestige of the position" was insufficient to establish the exchange required for the formation of a contractual relationship. The court continued, "for 'the internship itself' to be consideration for Adams's performance of the internship work, OFA must have been *induced* to offer Adam an internship by some valuable skill or characteristic Adam possessed that she would have used to benefit OFA through her willingness to work." Id. (emphasis in original) "[S]ince OFA would have filled (or not filled) the position regardless of Adam's interest, OFA did not give up anything in exchange

for Adam's performance, and Adam cannot be said to have 'exchanged' her performance with OFA in return for the internship opportunity." As such, the court held, no contractual relationship was formed.

Similar to plaintiff's internship in Adam, the Music Director Experience would not have formed the basis of a contractual relationship between Plaintiffs and Arts Ignite because there would have been no exchange of promises amongst the parties. The Music Director Experience – a shadowing opportunity – did not require, or even ask, the selected participant to provide any particular skill or characteristic to Defendant Wicked. Instead, the selected participant would merely be observing the rehearsals and productions. The selected participant was not expected to offer anything to Wicked in exchange for just being present, and the only party benefiting from the Music Director Experience would be the selected participant. Moreover, Arts Ignite did not obtain any benefit through the Music Director Experience. As the court in Adam held, this "internship itself" type of approach to contract formation is not viable for a Section 1981 claim.[3]

Hollander v. Sears, Roebuck & Co., 450 F. Supp. 496 (D. Conn. 1978) is similarly instructive.[4] There, the plaintiff, a white male, alleged that he was excluded from consideration from the defendant's internship program "for Minority Students" because of his race. The internship program was an eleven-week program, and provided $130 per week for its participants. Id. at 498. In declining to characterize the internship program as creating a contractual relationship, the court stated that the interns "were not paid by Sears to fill regular positions as stock boys,

[3] Plaintiffs cite to a footnote in Adam for the narrow proposition that "payment makes an internship a contract" (AC ¶ 59). However, as noted above, the actual holding of Adam cuts squarely against them: the court concluded that no contractual relationship existed where the alleged consideration was merely "the internship itself," because the defendant "did not give up anything in exchange for [the plaintiff's] performance" and a modest travel stipend does not convert that dynamic into a bargained-for contractual exchange. In short, Plaintiffs cherry-pick a footnote from *Adam* while ignoring the case's core holding, which actually compels dismissal of their claim.

[4] Hollander was upheld in recent decisions from 2002 and 2016. See, Adam, 210 F. Supp. 3d 979; Marvelli v. Chaps Cmty. Health Ctr., 193 F. Supp. 2d 636 (E.D.N.Y. 2002).

inventory-takers, cashiers, salesmen, clerks, or in the complaint department. They were paid to come in and observe the performance of such jobs, to try them out for short periods, and to be taught the relationships among various positions." Id. at 504. The internship's brochure described the program as an opportunity "'to learn what business and specifically, retailing is all about.'" Id. While the interns received a weekly payment, this payment made no difference in the rejection of the identification of the position as a contractual relationship between the selected participants and Sears: "the object of the payment to an intern was not to have him work as an employee in carrying on Sears' retail business; rather, it was payment to secure his attention to the manner in which Sears' regular employees worked." Id. at 505.

Just like the summer internship program in Hollander, the Music Director Experience was an opportunity to learn. The selected participant was not asked to provide any services to Wicked, and the Amended Complaint does not allege otherwise. Instead, the Music Director Experience provided the selected participant with the opportunity to "observe the performance" of what it meant to put together a Broadway production. Plaintiffs' attempt to establish a contractual relationship by alleging that the participant received a "weekly stipend" and that the selected participant later obtained other jobs does not change this reality. As demonstrated with the internship in Hollander, a mere stipend does not convert a three-week educational program into employment, and alleged downstream professional benefits do not transform such observational learning program into a job offer. See also, Woodson v. California, No. 2:15-cv-01206-MCE-CKD, 2016 U.S. Dist. LEXIS 153573, at *18 (E.D. Ca. Nov. 4, 2016) (plaintiff, a "foster grandparent" who received an hourly stipend, was "not entitled to Section 1981 protection because Plaintiff is not an employee"); Glaser v. Upright Citizens Brigade, LLC, 377 F. Supp. 3d 387, 397 (S.D.N.Y. 2019) (declining to find an employment relationship because "the Second Circuit has held that the

networking opportunities that came along with volunteering in a local professional organization were incidental to that volunteering" thus, the Court held "that the opportunities for professional growth that came along with Glaser's stage time at a local comedy theater were incidental to his performances.").

As set forth above, Plaintiffs have failed to establish the existence, or even the potential existence, of a contractual relationship with Arts Ignite. Plaintiffs have also failed to establish any but-for causation as required for a Section 1981 claim. See Domino's Pizza, 546 U.S. at 476. As such, Plaintiffs' Section 1981 claims should be dismissed.

**C. Plaintiffs Ancillary Failure to Hire Argument is Misplaced**

To the extent Plaintiffs seek to assert an alternative theory of liability based on a purported failure to hire, such claim also fails. Plaintiffs seemingly rely on Daniels v. Pipefitters' Ass'n Local Union No. 597, 945 F.2d 906, 915 (7th Cir. 1991) to allege "MUSE's failure to refer Lynch for employment and other contractual opportunities violates § 1981. AC ¶ 77. Plaintiffs' reliance is misplaced. Daniels involved a union hiring hall that controlled and actively referred workers to specific employers pursuant to a collective-bargaining agreement—a far cry from a nonprofit directory that offers members "networking events," "mentorship opportunities," and "access to [a] Job Board." Nor does it allege that MUSE's failure to add Lynch to the Directory deprived him of any actual specific *employment* contractual opportunity with any particular employer. To the contrary, Lynch's own allegations establish only, at best, that MUSE never responded to his registration inquiry. AC ¶ 35. That silence is patently insufficient to survive a motion to dismiss, as it does not establish anything more than "sheer possibility," which is not actionable. Iqbal, 556 U.S. at 678.

**D. The Music Director Experience Was Not a Contest**

Recognizing the weakness of their employment-contract theory, Plaintiffs now advance an alternative contractual theory: that the Music Director Experience "was at least a contest." AC ¶ 62. This theory, like Plaintiffs' other far-fetched contractual theories, fails. Preliminarily, the Amended Complaint's assertion that the Music Director Experience "was at least a contest" (Id.), is a legal conclusion, and is therefore dismissible. See Ashcroft, 556 U.S. at 678. Simply labeling a mentorship program a "contest" does not make it one.

Moreover, it is apparent that the Music Director Experience was not a contest. As Plaintiffs alleged in the Amended Complaint, the Music Director Experience was an educational opportunity allowing the selected participant to "attend[] rehearsals and performances of *Wicked*, study[] the musical score, and get[] 'practical playing and conducting experience by working with the Music Director one-on-one.'" Id. ¶ 15. By contrast, in AAER v. Fearless Fund, 103 F.4th 765, 775 (11th Cir. 2024), which Plaintiffs rely upon to support their contention that the Music Director Experience was a contest, the competition at issue was clearly a contest – not only was it called the "Fearless Strivers Grant *Contest*" (emphasis added), but there were clearly published rules to the contest which included discrete terms which a contestant could accept by entering. Here, the postings for the Music Director Experience were advertisements for a mentorship and shadowing program – not rules of a competition. According to Plaintiffs, the Google form application requested basic information and directory membership. Notably, while Plaintiff Lynch concedes that he was able to submit an application to the Music Director Experience, he does not allege that the application itself had specific terms associated with it. That is fatal to Plaintiffs' allegation that the Experience was a "contest" as the allegations in the Amended Complaint do not portray the type of detailed, binding rules and conditions that constitute a contractual offer for a contest.

Moreover, the contests in Fearless Fund and the other cases upon which Plaintiffs rely included cash grants as the ultimate prize. With the Music Director Experience, the "prize" was the experience itself. The $300 weekly stipend was merely an allowance to facilitate participation – not the prize awarded in exchange for winning a competition. As detailed above, where supposed "consideration" is simply the opportunity to participate in the program at issue, there is no contractual exchange sufficient for a Section 1981 case. See supra I(B), see Adam, 210 F. Supp. 3d at 985 (holding that "the internship itself" could not be its own consideration).

No matter which theory Plaintiffs advance – employment contract, contest, or some hybrid of the two – they cannot establish the contractual relationship that Section 1981 demands. The Music Director Experience created no contractual rights enforceable under Section 1981, and Arts Ignite is, therefore, entitled to dismissal of Plaintiffs' Section 1981 claims.

## II. Plaintiff Lynch's Title VII Claim Fails

### A. Plaintiff's EEOC Charge Was Untimely

It is well established that claims under Title VII must be filed within 300 days of the alleged discriminatory conduct. See 42 U.S.C.S. §2000e-5(e)(1); Mix v. Del. & Hudson Ry. Co., 345 F.3d 82, 89 (2d Cir. 2003) ("The 300-day statute of limitations 'begins to run when the alleged unlawful employment practice occur[ed].'") (internal citation omitted). While Plaintiffs' Amended Complaint does not allege sufficient facts to support a claim of discrimination, should the Court assume, for purposes of this motion only, that Plaintiff Lynch's August 2023 rejection from the Music Director Experience was discriminatory (AC ¶ 36), Plaintiff Lynch's deadline to file his Charge with the EEOC would have been June 26, 2024, at the latest. However, Plaintiff Lynch filed his Charge with the EEOC on August 17, 2025 – 717 days after the last alleged discriminatory

conduct. *See* Declaration of Ryan C. Chapoteau, Exhibit A.[5] Thus, Plaintiff Lynch's Title VII claim against Arts Ignite is untimely. See, e.g., Jennifer Shin v. NBC Universal Media, LLC, 23-cv-10996 (LJL), 2025 U.S. Dist. LEXIS 22561, at *16-20 (S.D.N.Y. Feb. 7, 2025) (holding that the EEOC charge was untimely where the charge was filed 301 days after the last date of alleged discriminatory conduct).

### B. Arts Ignite Is Not an Employment Agency Under Title VII

Even if this claim were timely (it is not), it still cannot advance. Title VII defines "employment agency" as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer." 42 U.S.C. § 2000e(c). While "litigation concerning the meaning of the term employment agency is rather sparse" (Scaglione v. Chappaqua Cent. Sch. Dist., 209 F. Supp. 2d 311, 316 (S.D.N.Y. 2002), "the plain language of this definition makes clear that, to be an 'employment agency' for the purposes of Title VII, an entity must regularly facilitate employment relationships between employers and employees." Girard v. Int'l Ass'n of Approved Basketball Offs., No. 3:18-cv-02049 (MPS), 2020 U.S. Dist. LEXIS 269378, at *11-12 (D. Conn. Feb. 27, 2020) aff'd 840 Fed. Appx. 635 (2d Cir. 2021); see Greenfield v. Field Enterprises, Inc., No. 71 C 2075, 1972 U.S. Dist. LEXIS 15304, at *10 (N.D. Ill. Feb. 1, 1972) (defining procure to mean to "find[] workers" for an employer). Indeed, "the statutory requirement that an employment agency be one that 'regularly' undertakes to procure employees or employment opportunities indicates

[5] Plaintiffs' EEOC Charge is a public record of which the Court may take judicial notice in connection with this pre-answer motion to dismiss. See Bernard v. Care Design N.Y., 22-cv-1527 (LJL), 2022 U.S. Dist. LEXIS 175326, at *50, n. 8 (S.D.N.Y. Sept. 27, 2022) (where defendants submitted the entire EEOC file in support of their motion to dismiss, the Court held it could consider "Plaintiffs' EEOC charge under Federal Rule of Evidence 201 solely as to 'whether adequate notice was provided to the EEOC of the conduct alleged to be discriminatory or to show what date the claim was signed, not for the truth of the assertions therein.'"); Salvat v. Constr. Res. Corp., 17-CV-4002 (VEC), 2017 U.S. Dist. LEXIS 201831, at *10 , n. 1 (S.D.N.Y. Dec. 7, 2017) ("Although the EEOC charge was not attached to the Complaint, courts in this circuit have recognized that an EEOC charge is a public record which may be considered in connection with a motion to dismiss.").

that the Congress had in mind to include only those engaged to a significant degree in that kind of activity as their profession or businesses." Brush v. S.F. Newspaper Printing Co., 315 F. Supp. 577, 580 (N.D. Cal 1970) aff'd 469 F.2d 89 (9th Cir. 1972) (holding that a newspaper that published employment advertisements in its classifieds section was not an employment agency under Title VII).

The allegations in the Amended Complaint do not support the proposition that Arts Ignite is an "employment agency" under Title VII, as the claims do not show that Arts Ignite actively "find[s] workers" for employers, or is "regularly" "procur[ing]" opportunities for employees (because it does not). The Amended Complaint simply alleges that MUSE's leaders may "make personal references" when "colleagues…reach out with staffing needs." AC ¶ 50. At best, this describes occasional, informal assistance – not a regular practice of placing employees with employers. The allegations in the Amended Complaint of "exclusive" job postings and networking events similarly describe member benefits – not the systematic referral process that Title VII contemplates. Gundogdu v. LinkedIn Corp., No. 23-12706, 2024 U.S. App. LEXIS 8797 (11th Cir. April 12, 2024), has already addressed this point. There, the plaintiff was an independent contractor who operated a consulting company and used LinkedIn to look for job opportunities, keep in touch with potential clients and former coworkers, and promote her consulting business. See id. at *2-*3. She maintained both a personal LinkedIn account and a business LinkedIn account, the latter used to create brand awareness, attract clients, and hire employees for her clients. See id. at *3. After plaintiff posted content opposing the COVID-19 vaccine, LinkedIn suspended her accounts, which she characterized as an expression of her religious and conservative views. See id. Similar to Plaintiffs' allegations in the instant Amended Complaint, in support of her claim, the plaintiff in Gundogdu alleged that LinkedIn was an "employment agency" because

it "provid[es] job-search [functionality] on its platform." See id. at *4. In sharp disagreement with the plaintiff, the Eleventh Circuit affirmed the District Court's decision, determining that access to LinkedIn's job board does not make the company an "employment agency". See id. at *7-*9. The Gundogdu court reasoned that "merely providing users with access to employment opportunities was not a significant degree of engagement in employment-related activities." Id. at *5.

Contrary to the assertions in the Amended Complaint, the MUSE website Plaintiffs cite to directly refute Plaintiffs' contention that MUSE "matches musicians with suitable work." (AC ¶ 107). Certainly, MUSE is not an employment agency based on the Court's assessment in Gundogdu. Accordingly, Plaintiff Lynch's Title VII claim fails.

## III. Plaintiffs' NYSHRL and NYCHRL Claims Fail Because Arts Ignite Is Not an Employment Agency and the Music Director Experience Was Not an Employment Opportunity or Internship

Plaintiffs' NYSHRL and NYCHRL claims have the same fatal defects as the Section 1981 and Title VII claims that make them subject to dismissal. Plaintiffs assert that Arts Ignite violated the NYSHRL and NYCHRL based on two theories: first, by asserting that Arts Ignite is an "employment agency" as defined under the statutes, and second, by alleging that the Music Director Experience was an employment opportunity or, in the alternative, an internship. More specifically, Plaintiffs allege that Arts Ignite is an employment agency that discriminated against Lynch by "declin[ing] to list him in its employment directory" (AC ¶ 108) and by "barr[ing] Lynch from the Music Director Experience." Id. ¶ 114. However, Plaintiffs' conclusory assertions are insufficient. As detailed herein, neither of Plaintiffs' theories of liability under the NYSHRL and NYCHRL are plausible. Accordingly, the NYSHRL and NYCHRL claims must be dismissed.

**A. Arts Ignite Is Not an Employment Agency under the NYSHRL or NYCHRL**

Both the NYSHRL and the NYCHRL have adopted the same definition of "employment agency" which is "any person undertaking to procure employees or opportunities to work." N.Y. Exec. Law § 296(2); N.Y.C. Admin. Law § 8-102. The Merriam-Webster Dictionary defines "undertake" as "to take upon oneself: set about". https://www.merriam-webster.com/dictionary/undertake. The term "procure" is defined as "to get possession of (something): to obtain (something) by particular care and effort." https://www.merriam-webster.com/dictionary/procure. Thus, "undertaking to procure employees or opportunities to work" requires an affirmative step on behalf of Arts Ignite to obtain potential employment opportunities. This is not what Arts Ignite does, nor do Plaintiffs allege as much.[6]

Indeed, Plaintiffs' sole allegations in support of their proposition that Arts Ignite is an employment agency is that "MUSE undertake[s] to procure opportunities for musicians to work in the New York theater industry." AC ¶ 106. This "conclusory allegation that Defendant is an 'employment agency' for the purposes of these statutes is part and parcel of the sort of 'formulaic recitation of the elements of a cause of action [that] will not do.'" Stoner v. Young Concert Artists, Inc., No. 11 Civ. 7279 (LAP), 2012 U.S. Dist. LEXIS 141892, at *23 (S.D.N.Y. Sept. 25, 2012) rev'd on other grounds, 626 Fed. Appx. 293 (2d Cir. 2015). Plaintiffs' mere reliance on *ipse dixit* logic is not enough to plausibly state a claim.

[6] To the extent Plaintiff seeks to assert that Arts Ignite was a joint employer with Defendant Maestra and/or Defendant Wicked, such argument should be given short shrift. In order to establish a joint employer relationship, a plaintiff must establish that the alleged "joint employer" had "significant control" over the employee, including "control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance and payroll." Chavannes v. Bronx Parent Hous. Network, Inc., No. 21-cv-5060 (JGK), 2022 U.S. Dist. LEXIS 163258, at *12 (S.D.N.Y. Sept. 9, 2022) citing Felder v. United States Tennis Ass'n, 27 F.4th 834 (2d Cir. 2022). While the Amended Complaint asserts that Arts Ignite, together with Defendants Wicked and Maestra, "determined the tasks that the intern would be assigned" (AC ¶ 16), "'organized a selection committee' that chose the winner" (Id. ¶ 37), and "'jointly set the rules' and 'team[ed] up' to create the contest" (Id. ¶ 63), there are no allegations in the Amended Complaint that Arts Ignite had the requisite "significant control" over the Music Director Experience such that any employment relationship – single or joint employer – existed. Accordingly, any argument regarding a joint employer theory fails.

To the extent Plaintiffs assert that the allegation "MUSE directory is an employment directory that matches musicians with suitable work in the theater industry" (AC ¶ 107) is sufficient to support their current pleading burden that Arts Ignite is an "employment agency," they are mistaken. Dispositively, this assertion is belied by the very information on MUSE's website that Plaintiffs seek to challenge. A member of the Directory receives access to a variety of benefits. These benefits include networking events, Zoom panels, mentorship opportunities, scholarship opportunities, fellowship opportunities, "access to MUSE Job Board", virtual events, and discounts/perks for music software and products. https://museonline.org/join/. In no way does it mention that MUSE is directly sourcing jobs for its Directory members, simply because it is not. The allegations in the Amended Complaint that MUSE connects its members with "work through the directory leaders' industry connections and through directory-members-only professional networking events" (AC ¶ 106) do not support a holding that MUSE is an employment agency. Rather it shows that MUSE functions as a networking organization. This Court should not rely upon Plaintiffs' self-serving, conclusory description of the Directory as the catalyst for defining MUSE as an "employment agency" when it is explicitly contradicted by the very evidence Plaintiffs refer to for such support. See Perry v. NYSARC, Inc., 424 Fed. Appx. 23, 25 (2d Cir. 2011) (when assessing a motion to dismiss, "the court must generally accept as true all of the factual assertions in the complaint. However, there is a narrow exception to this rule for factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice."); TufAmerica, Inc. v. Diamond, 968 F. Supp. 2d 588, (S.D.N.Y. 2013) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.") (internal citation omitted).

Gundogdu v. LinkedIn Corp., referenced above (supra II(B)), supports Arts Ignite's position that MUSE is not an employment agency. As noted above, the Eleventh Circuit held that access to a job board does not make the company an "employment agency" because "merely providing users with access to employment opportunities was not a significant degree of engagement in employment-related activities."[7] Id. at *5. MUSE, similarly, does not have any degree of control in the employment of applicants, and only provides a resource for its members. Accordingly, Plaintiffs have failed to sufficiently allege that Arts Ignite is an employment agency, making Plaintiffs' NYSHRL and NYCHRL claims subject to dismissal.

### B. The Music Director Experience Was Not an Employment Opportunity or Internship Capable of Creating a Contractual Relationship

Just as the Music Director Experience does not qualify as an employment opportunity under Section 1981, the Music Director Experience also does not qualify as an employment opportunity or internship under the NYSHRL or the NYCHRL. The NYSHRL governs discrimination claims "in the traditional employer-employee relationship." Murphy v. ERA United Realty, 251 A.D.2d 469, 470 (2d Dept 1998). Similarly, under the plain terms of NYCHRL, "the provision's coverage only extends to employees". Lihuan Wang v. Phoenix Satellite TV US, Inc., 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013). Although neither the NYSHRL nor the NYCHRL independently defines the term "employee," courts apply the same threshold inquiry used under Title VII: a plaintiff must plausibly allege that she was "hired" by the putative employer, which requires "remuneration in some form for her work" that conveys a "substantial benefit" — not one that is "merely incidental" or a "necessary incident of the work performed," and not "vague

[7] While Gundogdu v. LinkedIn Corp. was brought under Title VII, and not the NYSHRL or NYCHRL, the same conclusion is warranted under the NYSHRL and NYCHRL because similar threshold inquiries are conducted under all three statutes. Areu v. Fox News Network, LLC, No. 20-CV-8678, 2021 U.S. Dist. LEXIS 171332, at *27 (S.D.N.Y. Sept. 9, 2021).

benefits" such as "networking opportunities," "widespread publicity[,] or name recognition." Areu v. Fox News Network, LLC, No. 20-CV-8678, 2021 U.S. Dist. LEXIS 171332, at *23–24 (S.D.N.Y. Sept. 9, 2021). The NYSHRL applies this standard because "the standards for recovery under [the NYSHRL] . . . are the same as the federal standards under Title VII." Id. The NYCHRL likewise imposes "the threshold remuneration condition that is essential for an individual to qualify as an 'employee'" under both Title VII and the NYSHRL. Id. at *27.

In Areu, the Court held that travel expenses, accommodations, hair and makeup services, and other collateral perks the plaintiff received in connection with her unpaid, on-air appearances were "insufficiently substantial to qualify as remuneration" and were instead "merely . . . incidental to the activity performed," compelling dismissal of her discrimination claims under Title VII, the NYSHRL, and the NYCHRL. Areu, 2021 U.S. Dist. LEXIS 171332, at *50, n.6. Here, the Music Director Experience and the travel stipend the recipient received falls woefully short of the arrangement already rejected in Areu. Even accepting Plaintiffs' assertions that the Music Director Experience would have opened doors for Plaintiff lynch, like the "field test" audition process used in Areu in lieu of "traditional" hiring, the Music Director Experience still was not an offer of employment that subjects Arts Ignite to liability under the NYSHRL or NYCHRL. A "pipeline program" of a "three-week intensive shadowing engagement" for "aspiring" and "emerging" music directors "looking to make a big leap," is not an offer of employment. AC ¶¶ 15, 112. Indeed, the participant's role was purely observational and educational – attending rehearsals and performances, studying the score, and "gaining practical playing and conducting experience by working with the Music Director one-on-one." Id. ¶ 15. It has already been determined that such actions are not assigned job duties under an employer's direction and control to create the required employer-employee relationship for Plaintiff claims to survive dismissal. As the Areu Court noted,

an employer "logically cannot discriminate against a person in the 'conditions or privileges of employment' if no employment relationship exists." Areu, 2021 U.S. Dist. LEXIS 171332, at *23 (quoting Wang v. Phx Satellite Television US, Inc., 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013)).

Moreover, the weekly travel stipend the Amended Complaint identifies in an attempt to demonstrate remuneration, is precisely the kind of incidental, non-substantial payment that Areu held as insufficient as the stipend was tied to a fixed, three-week shadowing period rather than an ongoing employment relationship. Like the travel and grooming benefits deemed inadequate in Areu, the stipend provided was for participation in a training experience rather than the performance of employment duties. See id.

Additionally, the Music Director Experience did not create an "intern" position as that term is defined under the NYSHRL or NYCHRL. Under the NYSHRL, an "intern" is a "person who performs work for an employer for the purpose of training" under various circumstances. N.Y. Exec. Law § 296-c. Similarly, under the NYCHRL, an "intern" is defined as "an individual who performs work for an employer on a temporary basis" for various purposes. N.Y.C. Admin. Code § 8-102. The individual selected for the Music Director Experience did not "perform[] work" to the benefit of MUSE, as would be required under the NYSHRL and NYCHRL for the Music Director Experience to be classified as an internship position. Rather, the position, as stated above, is more akin to a networking or volunteer position – neither of which create an employment relationship. See Pastor v. P'ship for Children's Rights, 10-cv-5167 (CBA)(LB), 2012 U.S. Dist. LEXIS 140917 (E.D.N.Y. Sept. 27, 2012) (volunteers were not considered employees because "reimbursement for Continuing Legal Education ('CLE') courses and multiple hours of classes and training in the field of education law . . . are not the type of substantial job-related benefits that give rise to an employment relationship.").

Plaintiffs have not plausibly alleged that the Music Director Experience conferred the kind of substantial, employment-like remuneration and control that the statutes require and the position does not constitute "employment" or an "internship" under either the NYSHRL or the NYCHRL. Therefore, this Court should dismiss Plaintiffs' NYSHRL and NYCHRL claims.

### C. Plaintiffs' Discriminatory-Advertising Claims Fail under Both the NYSHRL and NYCHRL

In addition to their employment-agency and employment-opportunity theories, Plaintiffs appear to assert that Arts Ignite violated the NYSHRL and NYCHRL by circulating advertisements for the Music Director Experience that purportedly "excluded white male applicants." AC ¶ 141. These claims fail for the same fundamental reasons Plaintiff's other NYSHRL and NYCHRL claims fail: Arts Ignite is neither an "employer" nor an "employment agency" within the meaning of either statute, and, as stated above, the Music Director Experience does not constitute and "internship" or "prospective employment" as contemplated under either statute. N.Y. Exec. Law § 296(1)(d); N.Y.C. Admin. Code § 8-107(1)(d); § 8-102.

## IV. Plaintiffs' New York Civil Rights Law Claim Fails as a Matter of Law

Section 40-c of the New York State Civil Rights Law provides that "[n]o person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability . . . be subjected to any discrimination in his or her civil rights, or to any harassment[.]" Where a defendant violates the NYSHRL, they are subject to the civil penalties of §40-c. Thus, "[f]acts sufficient to sustain a cause of action under [NYSHRL] will support a cause of action under section 40-c of the Civil Rights Law." Hyman v. Cornell Univ., 834 F. Supp. 2d 77, 84-85 (N.D.N.Y. 2011) (internal citation omitted). On the other hand, "[w]here a plaintiff cannot support a claim under the Human Rights Law, the defendant will not be exposed to liability under § 40-c." Id. at 85. As

detailed above, Plaintiffs' NYSHRL claims are dismissible. As such, Plaintiffs' Civil Rights Law claim must also be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant Arts Ignite's motion to dismiss the Amended Complaint in its entirety and with prejudice pursuant to Rule 12(b)(6), together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

Dated: September 18, 2026
New York, New York

By: /s/ Ryan C. Chapoteau
Ryan C. Chapoteau
Casey Katz Pearlman

ATTORNEYS FOR DEFENDANT ARTS IGNITE INC.

**Certification of Compliance with Word Count**

I hereby certify that the foregoing Memorandum of Law in Support of Defendant Arts Ignite's Motion to Dismiss Plaintiff's Amended Complaint complies with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. The Memorandum of Law contains 7,721 words as calculated by the word processing system used to prepare the document, excluding the case caption, table of contents, table of authorities, and signature block.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

Dated: September 18, 2026
New York, New York

By: *<u>/s/ Ryan C. Chapoteau</u>*
Ryan C. Chapoteau
Casey Katz Pearlman

ATTORNEYS FOR DEFENDANT ARTS IGNITE, INC.