UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS and KEVIN LYNCH,<br><br>Plaintiffs,<br><br>- against -<br><br>MAESTRA MUSIC, INC.; ARTS IGNITE INC. d/b/a MUSICIANS UNITED FOR SOCIAL EQUITY (MUSE); and WICKED LLC,<br><br>Defendants. | Case No. 26 Civ. 4645 (DLC) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MAESTRA MUSIC, INC.'s MOTION TO DISMISS THE AMENDED COMPLAINT**

**DAVIS WRIGHT TREMAINE LLP**
Roy P. Salins
Matteo Taraborrelli
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
roysalins@dwt.com
matteotaraborrelli@dwt.com
(212) 489-8230
Attorneys for Defendant Maestra Music, Inc.

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 3

ARGUMENT ........................................................................................ 5

I. **The Motion To Dismiss Standard** ........................................................................................ 5

II. **Plaintiffs Fail To Plead A Claim Under Section 1981 Against Maestra (Counts I and III)** ........................................................................................ 5

A. The MD Experience Did Not Arise Under A Contract With Anyone, Let Alone Maestra ........................................................................................ 6

B. The MD Experience Was Not A Contest ........................................................................................ 9

C. Race Was Not A But-For Cause Of Maestra's Actions ........................................................................................ 12

D. Plaintiffs' Section 1981 Claims Fail As The Website Terms Of Use And Privacy Policy Are Not A Contract ........................................................................................ 13

III. **Lynch's Discrimination Claims Related To The MD Experience Under The NYSHRL And NYCHRL Fail (Counts V, VII-IX)** ........................................................................................ 14

A. The MD Experience Was Not Employment or An Internship ........................................................................................ 14

i. Plaintiffs Do Not Allege The MD Participant Received Sufficient Remuneration ........................................................................................ 15

ii. Plaintiffs Do Not Allege That An Employment Relationship Existed ........................................................................................ 15

iii. The MD Experience Was Not An Internship ........................................................................................ 17

IV. **Plaintiffs Fail To Allege That Maestra Is An Employment Agency Under Title VII, The NYSHRL And The NYCHRL** ........................................................................................ 18

A. Maestra Is Not An Employment Agency Under Title VII (Count IV) ........................................................................................ 18

B. Maestra Is Not An Employment Agency Under The NYSHRL And The NYCHRL (Counts VII and IX) ........................................................................................ 20

V. **Lynch's Discrimination Claims Under The New York Civil Rights Law Must Be Dismissed (Count VI)** ........................................................................................ 21

CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acosta v. City of N.Y*,
No. 11 Civ. 856, 2012 WL 1506954 (S.D.N.Y. April 26, 2012)....5

*Adam v. Obama for Am.*,
210 F. Supp. 3d 979 (N.D. Ill. 2016)....7

*Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*,
103 F. 4th 765 (11th Cir. 2024)....9, 10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5

*Beastie Boys v. Monster Energy Co.*,
983 F. Supp. 2d 338 (S.D.N.Y. 2013)....8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5, 20

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*,
No. 20 Civ. 3809, 2021 WL 2206486 (S.D.N.Y. June 1, 2021)....21

*Charles H.M.S. Sexton, I v. Dep't of Homeless Servs.*,
No. 24 Civ. 8895, 2026 WL 2434870 (S.D.N.Y. July 30, 2026)....6

*Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989)....15, 19, 20

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 (2006)....5, 6

*Dubose v. SUNY Mar. Coll. Off. of Fin. Aid*,
No. 24 Civ. 05547, 2025 WL 2662512 (S.D.N.Y. Sept. 17, 2025)....5

*Girard v. Int'l Ass'n of Approved Basketball Offs., Inc.*,
840 F. App'x 635 (2d Cir. 2021)....19

*Glaser v. Upright Citizens Brigade, LLC*,
377 F. Supp. 3d 387 (S.D.N.Y. 2019)....8

*Gundogdu v. LinkedIn Corp.*,
No. 23 Civ. 12706, 2024 WL 1597781 (11th Cir. Apr. 12, 2024)....18, 21

*Hollander v. Sears, Roebuck & Co.*,
450 F. Supp. 496 (D. Conn. 1978) ....................7, 10, 17

*Horror Inc. v. Miller*,
15 F.4th 232 (2d Cir. 2021) ....................16

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018) ....................8, 15

*Lee v. Yang*,
No. 21 Civ. 7934, 2023 WL 419193 (S.D.N.Y. Jan. 26, 2023) ....................7

*Leonard v. PepsiCo Inc.*,
88 F. Supp. 2d 116 (S.D.N.Y. 1999) ....................9

*Padmanabhan v. N.Y Inst. of Tech. Campus*,
No. 18 Civ. 5284, 2019 WL 4572194 (S.D.N.Y. Sept. 20, 2019) ....................21

*Pastor v. P'ship for Children's Rights*,
No. 10 Civ. 5167, 2012 WL 4503415 (E.D.N.Y. Sept. 27, 2013),
*aff'd*, 538 F.App'x 119 (2d Cir. 2013) ....................8

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
653 F. Supp. 3d 80 (S.D.N.Y. 2023) ....................12

*Roelcke v. Zip Aviation, LLC*,
571 F. Supp. 3d 214 (S.D.N.Y. 2021) ....................14

*Scaglione v. Chappaqua Cent. Sch. Dist.*,
209 F. Supp. 2d 311 (S.D.N.Y. 2002) ....................19

*Sexton v. Dep't of Homeless Servs.*,
No. 24 Civ. 8895, 2026 WL 2431968 (S.D.N.Y. Aug. 19, 2026) ....................6

*Singh v. City of New York*,
524 F.3d 361 (2d Cir. 2008) ....................17

*Stack v. Karr-Barth Assocs., Inc.*,
No. 18 Civ. 10371, 2021 WL 1063389 (S.D.N.Y. Mar. 18, 2021) ....................16

*Stoner v. Young Concert Artists, Inc.*,
No. 11 Civ. 7279, 2012 WL 4471602 (S.D.N.Y. Sept. 26, 2012),
*aff'd in part, vacated in part, remanded in part*, 626 F.App'x 293 (2d Cir. 2015) ....................20

*Taylor v. Bronx Parent Housing Network*,
No. 21 Civ. 04890, 2023 WL 3996620 (S.D.N.Y. June 14, 2023) ....................14

*United States v. City of New York*,
359 F. 3d 83 (2d Cir. 2004) ... 14, 15, 16

*Walling v. Portland Terminal Co.*,
330 U.S. 148 (1947) ... 17

**State Cases**

*African Diaspora Mar. Corp. v. Golden Gate Yacht Club*,
110 A.D.3d 204 (1st Dep't 2013) ... 11

*Sargent v. New York Daily News, L.P.*,
42 A.D.3d 491 (2d Dep't 2007) ... 11

**State Statutes**

N.Y. Civ. Rights Law § 40-c ... 21

N.Y. Exec. Law § 292 ... 20

N.Y. Exec. Law § 296-c(1) ... 17

**Regulations**

N.Y.C. Admin. Code § 8-102 ... 17, 20

N.Y.C. Admin. Code § 8-107 ... 17

**Other Authorities**

Restatement (Second) Contracts § 1 (1981) ... 6

Restatement (Second) of Contracts § 3 (1981) ... 6

Restatement (Second) of Contracts § 17 (1981) ... 6

## PRELIMINARY STATEMENT

The Amended Complaint ("AC") of Kevin Lynch and American Alliance for Equal Rights ("AAER") (together, "Plaintiffs") repackages the same fundamentally flawed claims advanced in their original pleading. Although Plaintiffs now allege scattershot descriptions of the Music Director Experience ("MD Experience") as a contract, contest, internship, and/or employment opportunity, the factual allegations continue to describe a short-term, essentially unpaid (other than a meager stipend) shadowing engagement through which an aspiring music director would observe rehearsals and performances of *Wicked*, study the score, and receive one-on-one instruction and professional development from experienced industry professionals. Plaintiffs' allegations confirm that the MD Experience was designed to benefit the participant, not a position created to perform work for anyone.

These admissions are fatal to Plaintiffs' claims against Maestra. First, Plaintiffs fail to plausibly allege that the MD Experience arose from a contractual relationship involving Maestra, as required to sustain a claim under 42 U.S.C. § 1981 ("Section 1981"). The AC identifies no consideration flowing to or from Maestra and instead alleges only a mentorship opportunity through which participants received training, exposure, and career-development opportunities. Plaintiffs likewise cannot manufacture a contractual relationship by relabeling the MD Experience as a "contest," where Plaintiffs allege neither the hallmarks of a contest nor the reciprocal rights and obligations present in the authorities on which Plaintiffs rely.

Plaintiffs' additional Section 1981 claim against Maestra, based on the RISE directory, fares no better. The AC attempts to fabricate an applicable contractual relationship based on the RISE website's Terms of Use and Privacy Policy, but Plaintiffs do not plausibly allege that these website terms gave rise to a contractual opportunity impaired by race. Nor do Plaintiffs allege that the challenged directory functionality interfered with any right or benefit.

Second, Plaintiffs' claims related to the MD Experience under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") fail to plausibly allege that the MD Experience, or any of the other opportunities identified in the AC, constituted employment or internship opportunities. Assuming, arguendo, that the participant received sufficient remuneration (which did not happen), the AC does not allege facts sufficient to establish an employment relationship. Nor does it plausibly allege that participants performed work for any employer, a prerequisite for internship status under both the NYSHRL and NYCHRL. Instead, Plaintiffs allege observation, mentorship, training, and professional development, not work.

Third, Plaintiffs' Title VII, NYSHRL, and NYCHRL claims fail because the AC does not plausibly allege that Maestra is an employment agency. At most, Plaintiffs allege that Maestra operates professional directories and provides resources designed to increase visibility and networking opportunities for theatre professionals. Those allegations do not establish that Maestra undertakes to procure employees for employers or employment opportunities for job seekers. If accepted, Plaintiffs' theory would improperly transform professional directories, networking organizations, and mentorship programs into employment agencies, which is not the intent or purpose of the law.

Accordingly, notwithstanding Plaintiffs' efforts to recast the MD Experience and Maestra's directories as employment-related opportunities, the AC still fails to state a claim against Maestra and should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS[1]

Lynch, a white male, is a composer and musician in the tri-state area. (AC ¶ 11.) Maestra is a Manhattan-based nonprofit that maintains a professional directory for musicians in the theater industry. (*Id.* ¶ 7.) Lynch alleges that, in June 2023, Maestra announced it was "teaming up" with MUSE and *Wicked* to sponsor the MD Experience. (*Id.* ¶ 14.)

The MD Experience was a "three-week intensive" geared towards "aspiring music directors looking to make a big leap in their MD journeys." (*Id.* ¶ 15.) The selected participant would receive a weekly stipend of $300 from *Wicked* and would observe rehearsals and performances of *Wicked*, study the musical score, and obtain practical playing and conducting experience through one-on-one interaction with the production's Music Director. (*Id.* ¶¶ 15-16, 61, 135.) Plaintiffs further characterize the MD Experience as a "pipeline program" and "shadowing engagement" intended to provide participants with exposure to the work of a Broadway music director. (*Id.* ¶¶ 15, 25, 112.)

Plaintiffs allege that the MD Experience was advertised as being available to Maestra and MUSE directory members. (*Id.* ¶ 17.) The AC further alleges that applicants were required to indicate whether they were members of the MUSE and/or Maestra directories and to provide links to their directory profiles when applying for the MD Experience. (*Id.* ¶¶ 25-26.)

Although Lynch alleges that he was not a member of either directory when the application process opened, he nevertheless attempted to register for both directories and ultimately created a profile through Maestra's website. (*Id.* ¶¶ 27-32.) According to the AC, the Maestra website created a profile link for Lynch, although his profile would not become publicly searchable unless it was reviewed and approved by Maestra. (*Id.* ¶ 29.) Lynch thereafter used

[1] Maestra accepts the facts alleged in the AC as true solely for purposes of this motion.

the profile link generated through Maestra's website to submit a complete and timely application for the MD Experience. (*Id.* ¶ 32.)

Plaintiffs further allege that, on July 5, 2023, Lynch contacted Maestra regarding the status of his profile and received an e-mail stating that his profile application had been denied. (*Id.* ¶ 33.) According to the AC, Lynch's profile was subsequently removed. (*Id.* ¶ 34.) Notwithstanding Plaintiffs' allegation that Lynch was ultimately not admitted to either directory, Plaintiffs concede not only that Lynch was able to submit an application, but that his application for the MD Experience was reviewed. (*Id.* ¶¶ 32, 37.)

Plaintiffs allege that, in August 2023, Maestra and MUSE announced the individual selected to participate in the MD Experience. (*Id.* ¶ 36.) According to the AC, the selected participant was a member of the Maestra and MUSE directories. (*Id.*) Plaintiffs further allege that the participant later credited the MD Experience with obtaining additional opportunities in the theater industry and subsequently performed work for *Wicked*. (*Id.* ¶¶ 40-44.)

Plaintiffs admit that Lynch maintains an active profile in Maestra's RISE Theatre Directory, a separate directory operated by Maestra. (*Id.* ¶ 47.) Plaintiffs allege that certain employers use RISE when identifying candidates for employment opportunities and that the directory allows users to search for candidates using various criteria, including race and sex. (*Id.* ¶¶ 47-49, 86-88.) The AC further alleges that Lynch obtained at least one employment inquiry through his RISE profile after a theater located his information through the directory. (*Id.* ¶ 49.)

# ARGUMENT

## I. The Motion To Dismiss Standard

To survive a motion to dismiss, a plaintiff must plead sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Thus, "[w]here a complaint pleads facts that are merely consistent with defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief[,]'" and must be dismissed." *Id*. (quoting *Twombly*, 550 U.S. at 557). While a plaintiff need not plead a *prima facie* case at the pleading stage, the plaintiff must allege sufficient facts that would allow the Court, in substance, to infer the elements of a *prima facie* case. *See Acosta v. City of New York*, No. 11 Civ. 856, 2012 WL 1506954, at *5 (S.D.N.Y. April 26, 2012).

## II. Plaintiffs Fail To Plead A Claim Under Section 1981 Against Maestra (Counts I and III)

To state a claim under Section 1981, a plaintiff must show: "(1) [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts)." *Dubose v. SUNY Mar. Coll. Off. of Fin. Aid*, No. 24 Civ. 05547, 2025 WL 2662512, at *2 (S.D.N.Y. Sept. 17, 2025). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "Any claim brought under § 1981, therefore, must initially identify an impaired

contractual relationship, under which the plaintiff has rights." *Id*. Plaintiffs' Section 1981 claims against Maestra, whether based on the MD Experience or the RISE directory, must fail as Plaintiffs do not sufficiently allege that the MD Experience arose from a contract nor do they contend that race was a but-for cause of any of Maestra's alleged conduct.

### A. The MD Experience Did Not Arise Under A Contract With Anyone, Let Alone Maestra[2]

Lynch's Section 1981 claim based on the MD Experience fails because it did not arise from a contract. "Congress intended the term contract as used in Section 1981 to have its ordinary meaning." *Charles H.M.S. Sexton, I v. Dep't of Homeless Servs.*, No. 24 Civ. 8895, 2026 WL 2434870, at *11 (S.D.N.Y. July 30, 2026), report and recommendation adopted sub nom. *Sexton v. Dep't of Homeless Servs.*, 2026 WL 2431968 (S.D.N.Y. Aug. 19, 2026). The Restatement (Second) of Contracts defines a contract as "a promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Restatement (Second) of Contracts § 1 (1981). In addition to an agreement based upon mutual assent, a contract requires consideration. *Id.* §§ 3, 17.

Plaintiffs' allegations establish that the MD Experience was a short-term educational and mentorship program designed to benefit aspiring music directors, not a contract. Plaintiffs allege that the MD Experience was a "three-week intensive for aspiring music directors looking to make a big leap[,]" through which the selected participant would attend rehearsals and performances, study the score, and receive one-on-one instruction and practical conducting experience from *Wicked*'s Music Director. (AC ¶ 15.) Plaintiffs further describe the program as

[2] To the extent Lynch continues to base his Section 1981 claim, or any other claim, on a theory of joint employment, that theory likewise fails. The Amended Complaint contains no allegations that Maestra supervised the participant, directed the participant's day-to-day activities, evaluated the participant's performance, maintained employment records, administered payroll, or otherwise exercised control over the participant's activities.

a "shadowing" opportunity and a "pipeline program" intended to provide exposure, mentorship, networking opportunities, and career advancement for emerging artists. (*Id.* ¶¶ 15, 25, 112.)

Far from participating in the production itself, the selected participant would primarily observe rehearsals and performances while learning from Broadway professionals. (*Id.* ¶¶ 15, 25, 112, 135.) Thus, Plaintiffs depict the MD Experience as a professional-development program focused on observation, mentorship, and skill-building rather than a position created to perform productive work for any Defendant, let alone Maestra. "In substance [the MD Experience] was not a contract for services between an employer and employee." *Hollander v. Sears, Roebuck & Co.*, 450 F. Supp. 496, 504-05 (D. Conn. 1978) (finding no contract for services where "the object of the payment to an intern was not to have him work as an employee in carrying on [defendant]'s retail business" but rather "payment to secure his attention to the manner in which [defendant]'s regular employees worked in carrying on all phases of its retail business"); *see also Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 986 (N.D. Ill. 2016) ("Since [Obama for America] cannot be said to have 'exchanged' the opportunity to work as an intern for [plaintiff]'s work performance, 'the internship itself' is not consideration and cannot form the basis of a contract.").

Furthermore, Plaintiffs do not plausibly allege any contractual relationship between the selected participant and Maestra because they do not allege that Maestra either provided consideration to, or received consideration from, the selected participant.[3] Indeed, the AC contains no allegation that Maestra paid the participant or otherwise exchanged anything of value with the participant. It is axiomatic that there must be "sufficient remuneration" for an employment or prospective employment relationship to exist. *See Lee v. Yang*, No. 21 Civ.

[3] Plaintiffs allege that the experience and stipend were provided by *Wicked*, not Maestra. (AC ¶¶ 15, 16, 61.)

7934, 2023 WL 419193, at *2-3 (S.D.N.Y. Jan. 26, 2023). Here, Plaintiffs allege that the selected participant would receive "practical playing and conducting experience" and a $300 weekly stipend in exchange for attending *Wicked* rehearsals and performances. (AC ¶¶ 15-16, 61.) The $300 weekly stipend identified in the AC is insufficient to be considered remuneration. *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 443 (S.D.N.Y. 2018) (finding that compensation in the form of transportation reimbursement, hair and makeup, and boosting of career prospect "fall short of the minimum level of significance or substantiality required to establish employee status in the absence of a salary"); *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 395-96 (S.D.N.Y. 2019) (free drinks and tickets to comedy shows and the opportunity to showcase work to casting directors held to be too insubstantial to qualify as remuneration); *Pastor v. P'ship for Children's Rights*, No. 10 Civ. 5167, 2012 WL 4503415, at *2 (E.D.N.Y. Sept. 28, 2012) (holding reimbursement for legal education courses was not a substantial job-related benefit that would give rise to an employment relationship), *aff'd*, 538 F.App'x 119 (2d Cir. 2013). And, the instruction, mentorship, rehearsal access, and conducting experience identified by Plaintiffs were all tied to participation in the *Wicked* production and interactions with *Wicked* personnel. (AC ¶¶ 15, 19, 61.)

Additionally, Plaintiffs do not allege that Maestra received anything amounting to consideration as a result of the MD Experience. Although Plaintiffs identify various "duties" the participant performed, they do not allege these duties were performed for Maestra. (*Id.* ¶¶ 15, 25, 112.) Further, the purported opportunity for Maestra "to tout [its] influence placing musicians on Broadway" does not constitute a benefit sufficient to establish a contractual relationship. *See Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 338, 350 (S.D.N.Y. 2013) (no consideration where any promotional benefit was merely incidental and where party

arguing in favor of the existence of the contract did not argue that there was a binding promise to provide promotion or website links).

**B. The MD Experience Was Not A Contest4**

Lynch's alternative attempt to characterize the MD Experience as a "contest" falls short as a matter of law. To the extent Lynch's contest theory relies on the graphics and promotional materials concerning the MD Experience, it fails because "[t]he general rule is that an advertisement does not constitute an offer." *Leonard v. PepsiCo Inc.*, 88 F. Supp. 2d 116, 122 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88 (2d Cir. 2000). Nor were the promotional materials "clear, definite, and explicit," such that they left "nothing open for negotiation," as required to fall within the narrow exception to that rule. *Id.* at 124. Indeed, the graphics and promotional materials identified in the Complaint did not even disclose several of the alleged components of the application process, including the essay and audition requirements. (AC ¶¶ 23-26.) Far from constituting a complete offer capable of acceptance, the materials merely advertised the existence of an opportunity and invited interested individuals to apply. *See Leonard*, 88 F. Supp. 2d at 122-24.

Moreover, the MD Experience bears little resemblance to the "contests" at issue in the cases cited by Plaintiffs. In *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, (AC ¶¶ 10, 51, 62), the defendant expressly described the program, which was limited exclusively to black females, as a "Grant Contest" under which successful applicants would receive $20,000 and other tangible benefits. 103 F. 4th 765, 769-70 (11th Cir. 2024). More importantly, participation

[4] Lynch's decision to advance an alternative "contest" theory further highlights the deficiencies in his employment and internship allegations. While Plaintiffs may plead alternative theories, the Amended Complaint cannot simultaneously allege that the MD Experience was a position through which an individual performed work for an employer and, at the same time, attempt to avoid those requirements by recasting the opportunity as something else entirely. At a minimum, Lynch's reliance on a non-employment theory underscores the absence of factual allegations plausibly establishing that the MD Experience constituted employment or an internship.

was governed by official contest rules that expressly stated: "BY ENTERING THIS CONTEST, YOU AGREE TO THESE OFFICIAL RULES, WHICH ARE A CONTRACT." *Id*. at 770. The contest rules also required participants to confer valuable rights on the sponsor, including the use of their names, likeness, and submissions. *Id*. Thus, the contractual relationship at issue arose from an express set of contest rules creating reciprocal rights and obligations.

Unlike the "Grant Contest" in *Fearless*, the MD Experience was not promoted as a contest, was not governed by official contest rules, and did not require applicants to grant rights to anyone, let alone Maestra, in exchange for participation. Nor does the AC identify any document comparable to the contest rules at issue in *Fearless* that purported to create a contractual relationship between the sponsors and the applicants.

The nature of the opportunity itself further distinguishes this case from *Fearless*. There, entrants competed for a $20,000 grant and other tangible business-development benefits. *Fearless*, 103 F.4th at 769-70. Here, by contrast, Plaintiffs allege that the selected participant would receive a modest $300 weekly stipend while attending rehearsals and performances, studying the score, and receiving one-on-one instruction and practical conducting experience from *Wicked*'s Music Director. (AC ¶¶ 15-16, 61.) These allegations describe a short-term educational and mentorship opportunity analogous to the experience at issue in *Hollander*, not a competition for a substantial prize like in *Fearless*.

Moreover, the plaintiff in *Fearless* challenged a program that expressly limited eligibility to Black women. *Fearless*, 103 F.4th at 771. Lynch, by contrast and despite his allegations that the MD Experience was limited to women or people of color, concedes not only that he applied to the MD Experience, but that his application was reviewed and assessed. (AC ¶¶ 25-31, 37.) These allegations are fundamentally inconsistent with the contest challenged in *Fearless*.

Likewise, *African Diaspora Mar. Corp. v. Golden Gate Yacht Club*, 109 A.D.3d 204, 207, 209-11 (1st Dep't 2013), involved a challenge arising from the America's Cup competition, where the parties' relationship was governed by a detailed protocol that established eligibility requirements, application procedures, deadlines, and a $25,000 entry fee. The First Department found a contract because the protocol specified the obligations undertaken by the competition organizer and the applicant's submission of the prescribed application and fee manifested assent to those terms. *Id.* at 211-12. Importantly, the First Department noted that "[t]he duties that [defendant] agreed to undertake to an applicant that submitted the prescribed application along with the $25,000 fee were also definite and certain." *Id*. at 212. This included the defendant's agreement to accept and review the application if certain conditions were satisfied. *Id*. Here, by contrast, Plaintiffs identify no entry fee and no comparable obligations agreed to by Defendants.

Similarly, in *Sargent v. New York Daily News, L.P.*, 42 A.D.3d 491, 492-93 (2d Dep't 2007), the plaintiff participated in a newspaper sweepstakes offering a potential $100,000 prize. The dispute concerned whether the sponsor had complied with the sweepstakes rules in determining the winning entry. *Id.*

Thus, unlike the contests in *Fearless*, *African Diaspora*, and *Sargent*, the MD Experience did not involve a substantial prize, an entry fee, an express exchange of rights, categorical exclusion from participation, or a set of reciprocal obligations between the sponsor and applicants. Rather, Plaintiffs allege only that Defendants offered a selective mentorship opportunity and chose one applicant from a larger pool. (AC ¶¶ 15, 23-39, 112.) That is not a contest in any contractual sense, and Plaintiffs cannot manufacture the contractual relationship required by Section 1981 simply by relabeling the MD Experience as one.

### C. Race Was Not A But-For Cause Of Maestra's Actions

Lynch's Section 1981 claim with respect to the MD Experience further fails because he does not plausibly allege that any conduct by Maestra was the but-for cause of the alleged discrimination. To state a claim under Section 1981, a plaintiff must plausibly allege that the defendant "would not have taken adverse action against [him] but for" his race. *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 97 (S.D.N.Y. 2023).

Here, Lynch does not allege that his non-selection for the MD Experience resulted from any race-based criterion imposed by Maestra. Although he baldly asserts that "Maestra, MUSE, and *Wicked* directly discriminated against" him by limiting eligibility for the MD Experience to members of the MUSE Directory, who are purportedly "necessarily people of color," that allegation is inconsistent with both the AC and the materials on which it relies. (AC ¶ 64.) Lynch alleges that the MD Experience was open to members of the Maestra and MUSE directories. (AC ¶¶ 17, 25.) Yet, the only allegedly race-based eligibility criteria identified in the AC with respect to the MD Experience concern the MUSE Directory, not the Maestra Directory. (AC ¶ 72.) Indeed, Lynch acknowledges that he was able to apply for the MD Experience using his Maestra profile link, and further alleges that his application was reviewed. (AC ¶¶ 32, 37.) Thus, the AC's own allegations establish that the purported criteria set by Maestra did not prevent Lynch from applying for, or being considered for, the MD Experience. Absent any factual allegation that Maestra imposed a race-based criterion on the MD Experience or otherwise caused Lynch's non-selection, Lynch fails to plausibly allege that any conduct by Maestra was a but-for cause of the alleged discrimination and his Section 1981 claim based on the MD Experience must be dismissed as against Maestra.

### D. Plaintiffs' Section 1981 Claims Fail As The Website Terms Of Use And Privacy Policy Are Not A Contract[5]

As with the MD Experience, Plaintiffs' Section 1981 claims with respect to the RISE Directory fail because they do not plausibly allege the existence of an impaired contractual relationship. Plaintiffs assert that, to join the RISE Directory, "members must read and accept an indemnification agreement, a choice-of-law clause that opts for New York law, and a forum-selection clause that opts for New York City." (AC ¶ 83.) Plaintiffs further allege that members "must agree to give RISE a license to 'use information' that you 'provide to us,' includ[ing] information provided at the time of registering for our directory." (AC ¶ 84.) In essence, Plaintiffs contend that the RISE Terms of Use and Privacy Policy constitute a contract between directory members and Maestra for purposes of a Section 1981 claim.

Most significantly, assuming arguendo, that the Terms of Use and Privacy Policy constitute a contract, Plaintiffs do not identify an impaired contractual right. Plaintiffs do not allege that Lynch, or anyone else, was promised referrals to prospective employers, interviews, employment opportunities, or any other professional benefit in exchange for agreeing to the purported provisions cited in the AC. The only purported contractual terms identified in the AC concern indemnification, governing law, forum selection, and Maestra's purported ability to use information supplied by directory members. (AC ¶¶ 83-84.) Count III therefore fails to allege that the challenged filtering function impaired any right, obligation, or benefit arising from Lynch's purported agreement with Maestra.

---

[5] Lynch's reliance on Maestra's Terms of Use and Privacy Policy underscores the absence of a cognizable contractual relationship arising from the MD Experience. Having failed to plausibly allege that the MD Experience gave rise to a contract, Lynch attempts to locate a contractual relationship in a series of ancillary website provisions that bear no connection to the alleged denial of the MD Experience or any alleged employment opportunity.

Fourth, Plaintiffs fail to plausibly allege but-for causation. Plaintiffs conclusory contend that, because the RISE Directory classifies Lynch by race, it "has provided him with fewer professional opportunities because of his race." (*Id.* ¶ 88.) Yet the AC does not identify a single employer that utilized the challenged filter to exclude Lynch from consideration, a specific position for which he was rejected, a search in which his profile otherwise would have appeared, or a contract that he likely would have obtained absent the challenged functionality. Such allegations are insufficient to plausibly establish that any conduct by Maestra was the but-for cause of a lost contractual opportunity. On the contrary, Plaintiffs admit that Lynch was contacted regarding a professional opportunity through the RISE Directory. (*Id.* ¶ 49.)

## III. Lynch's Discrimination Claims Related To The MD Experience Under The NYSHRL And NYCHRL Fail (Counts V, VII-IX)

Plaintiffs' discrimination claims under the NYSHRL and NYCHRL should be dismissed because Plaintiffs fail to allege that the MD Experience or any of the other purported opportunities identified in the AC were employment or internship opportunities.

### A. The MD Experience Was Not Employment or An Internship

As the NYSHRL and NYCHRL do not define "employee," courts look to Title VII case law as "instructive" because "courts use a nearly identical standard to determine the employment relationship across the three statutes." *Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 226 n.3 (S.D.N.Y. 2021). "To plead a formal employment relationship, a plaintiff must allege [first] that []he was 'hired' by the putative employer." *Taylor v. Bronx Parent Hous. Network*, No. 21 Civ. 04890, 2023 WL 3996620, at *3 (S.D.N.Y. June 14, 2023) (quoting *United States v. City of New York*, 359 F. 3d 83, 91-92 (2d Cir. 2004)). "To establish that []he was hired, a plaintiff must allege 'that []he received remuneration' from the putative employer in some form for [his]

work." *Id.* A plaintiff must then allege that "employment relationship existed" between him and his putative employer. *City of New York*, 359 F. 3d at 91-92.

**i. Plaintiffs Do Not Allege The MD Participant Received Sufficient Remuneration**

As discussed above, Lynch does not allege that the individual selected for the MD Experience received remuneration sufficient for an employment relationship to have existed. (*See supra* II.A.) "This remuneration need not be a salary, but must consist of substantial benefits not merely incidental to the activity performed." *Hughes*, 304 F. Supp. 3d at 442. The $300 weekly stipend and other purported benefits provided to the MD participant are insufficient to be considered remuneration. *Id.* at 443; *see also* cases cited *supra* II.A.

**ii. Plaintiffs Do Not Allege That An Employment Relationship Existed**

Even assuming, that the MD Experience participant received sufficient remuneration, Plaintiffs still fail to plausibly allege the existence of an employment relationship. Courts consider the thirteen factors articulated by the Supreme Court in *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), to determine whether an employment relationship exists. *See City of New York*, 359 F. 3d at 92. These factors include: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the

hired party. *Id*. "[T]he greatest emphasis [is placed] on the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks." *Id*.

The allegations in the AC do not allege that the MD Experience participant was an employee of Maestra. Most importantly, Plaintiffs do not allege that Maestra exercised the type of control over the participant's work that is indicative of an employment relationship. Rather than describing assigned tasks or productive labor, Plaintiffs allege that the participant would "[o]bserv[e] cast rehearsals," "[o]bserv[e] performances from both the orchestra pit and the sound board," "[s]tudy[] one of the keyboard books from the show," and "[g]ain[] practical playing and conducting experience by working with the Music Director one-on-one." (AC ¶ 15, 112.) These allegations describe observation, instruction, mentorship, and training. They do not plausibly allege that the participant was engaged to perform work for Maestra.

Many of the remaining factors likewise weigh against the existence of an employment relationship. The MD Experience lasted only three weeks. (AC ¶ 15.) Such a brief and temporary relationship weighs against an employment relationship. *See Horror Inc. v. Miller*, 15 F.4th 232, 255 (2d Cir. 2021) (approximately two months working on a single screenplay weighed against a finding of an employment relationship). So does the "weekly stipend" method of payment, as opposed to "compensation based on hours worked" which indicates "employee status[.]" S*tack v. Karr-Barth Assocs., Inc.*, No. 18 Civ. 10371, 2021 WL 1063389, at *5 (S.D.N.Y. Mar. 18, 2021). Plaintiffs do not allege that the participant was eligible for employee benefits, subject to payroll deductions, or treated as an employee for tax purposes. Nor do Plaintiffs allege that the participant possessed authority to hire assistants, manage personnel, or perform any function ordinarily associated with employment. Accordingly, Plaintiffs fail to allege that the participant was an employee of Maestra.

### iii. The MD Experience Was Not An Internship

The NYSHRL defines an intern as a person who "performs work for an employer for the purpose of training." N.Y. Exec. L. § 296-c(1). Similarly, the NYCHRL defines an intern as an individual who performs work for an employer on a temporary basis where that work provides training, enhances employability, provides experience for the benefit of the individual, and is performed under close supervision. N.Y.C. Admin. Code §§ 8-102, 8-107. Importantly, both statutes require that the individual perform work for an employer.

While the NYSHRL and NYCHRL do not define the term "work," the FLSA's definition of the term is instructive. "[T]he Supreme Court has generally described work as physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008) (internal quotation marks and citations omitted). While "exertion is not necessarily required" the primary "issue is whether the time is spent predominately for the employer's benefit or for the employee's[.]" *Id.* (internal quotation marks and citations omitted).

Plaintiffs' allegations foreclose such a finding. Plaintiffs characterize the MD Experience as a "three-week intensive" and "shadowing engagement" designed to provide "invaluable training and access" to aspiring music directors. (AC ¶¶ 15, 112.) Plaintiffs further allege that the participant would observe cast rehearsals, observe performances from the orchestra pit and sound board, study one of the keyboard books from the show, and gain practical playing and conducting experience through one-on-one instruction from *Wicked*'s Music Director. (AC ¶¶ 15, 135.) These allegations describe an individual who receives training and instruction, not an individual who performs work for an employer. The allegations therefore resemble the student observer rather than an internship. *See Hollander*, 450 F. Supp. at 504 ("The status of the interns was that of 'students'"); *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947) (trainees

enrolled in a course for prospective brakemen provided by the railroad not deemed employees). Since Plaintiffs do not allege that the MD Experience participant performed work, they cannot plausibly allege that the participant was an intern.

## IV. Plaintiffs Fail To Allege That Maestra Is An Employment Agency Under Title VII,[6] The NYSHRL And The NYCHRL

### A. Maestra Is Not An Employment Agency Under Title VII (Count IV)

Plaintiffs' Title VII claim fails because he does not plausibly allege that Maestra is an "employment agency" within the meaning of Title VII. An employment agency is not merely an entity that provides networking opportunities or makes information available to employers and job seekers. *See Gundogdu v. LinkedIn Corp.*, No. 23 Civ. 12706, 2024 WL 1597781, at *2 (11th Cir. Apr. 12, 2024) ("merely providing users with access to employment opportunities" is not "a significant degree of engagement in employment-related activities.").

Plaintiffs allege that Maestra maintains the Maestra and RISE directories, through which theatre professionals create profiles containing information about their skills, experience, and professional credits. (AC ¶¶ 47-49, 81, 96-98, 102.) Plaintiffs further allege that employers, producers, and other industry professionals can use those directories to identify potential candidates. (*Id.*) Those allegations describe a platform through which information is made available to users. They do not plausibly allege that Maestra itself procures employees for employers or procures employment opportunities for job seekers.

[6] Lynch's Title VII claims, as against Maestra, concern only the Maestra and RISE directories and Plaintiffs' claims that Maestra is subject to liability as an employment agency. To the extent Lynch seeks to assert a claim under Title VII based on the MD Experience, such a claim is untimely. On August 11, 2023, Lynch filed a complaint with the New York State Division of Human Rights ("NYSDHR") asserting claims of discrimination based on the MD Experience (the "NYSDHR Complaint"). On May 2, 2025, the NYSDHR correctly dismissed the NYSDHR Complaint. The NYSDHR served the Determination on May 2, 2025, which notified Lynch of his right to request a review by the EEOC within 15 days from his receipt of the Determination. Lynch, however, did not timely file a request for review from the EEOC. Rather, on August 17, 2025 (108 days after the NYSDHR served the Determination), Lynch filed a charge of discrimination with the EEOC (the "Charge"). Moreover, the Charge itself was untimely insofar as it was filed more than 300 days after the alleged discriminatory action.

The Complaint is devoid of allegations that Maestra identifies candidates for specific positions, recommends particular individuals to employers, screens applicants on behalf of employers, submits candidates for employment, negotiates hiring decisions, or otherwise participates in the employment relationship between third parties. Rather, Plaintiffs allege only that employers may independently search the directories and decide for themselves whom to contact and whom to hire. (*Id.* ¶¶ 47-49, 81, 96-98, 102.) Such allegations are insufficient to establish employment-agency status. The allegations here describe a platform that is materially closer to LinkedIn than to a traditional employment agency.[7]

In addition, Plaintiffs have not alleged that an employment relationship exists between the individuals who use the directories and the employers who purportedly hire from them. Plaintiffs make no mention of the remuneration threshold of any of the opportunities identified in the Complaint nor do they allege that any of thirteen non-exhaustive factors set forth by the Supreme Court in *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), are satisfied. For this independently sufficient reason, Plaintiffs' Title VII claim must fail. *See Girard v. Int'l Ass'n of Approved Basketball Offs., Inc.*, 840 F. App'x 635, 639 (2d Cir. 2021). Accordingly, Plaintiffs only allege that Maestra operates directories and provides professional-development resources that individuals or entities may independently choose to utilize. Because Plaintiffs do not plausibly allege that Maestra is engaged in the business of procuring employees for employers or employment opportunities for employees, their Title VII claims fail.

[7] Plaintiff citation to *Scaglione v. Chappaqua Cent. Sch. Dist.*, 209 F. Supp. 2d 311, 317 (S.D.N.Y. 2002) is misplaced. There, prospective employers were required to "hire from the eligible and preferred lists the defendant [was] responsible for providing." There is no such limitation with respect to Maestra or RISE.

### B. Maestra Is Not An Employment Agency Under The NYSHRL And The NYCHRL (Counts VII and IX)

Both the NYSHRL and NYCHRL define an "employment agency" as "any person undertaking to procure employees or opportunities to work." N.Y. Exec. Law § 292; N.Y.C. Admin. Code § 8-102. The MD Experience was neither an employment nor internship opportunity. Moreover, with the exception of allegations regarding the duration and compensation associated with *Almost Famous* – which Maestra does not concede satisfy the remuneration requirement – the AC does not allege facts addressing the *Reid* factors with respect to any of the other identified opportunities, much less facts supporting the existence of an employment or internship relationship for any of the other opportunities identified in the AC. (AC ¶ 113.) In sum, Plaintiffs fail to allege facts that Maestra procured employees or opportunities to work.

Thus, with these allegations removed, the remaining allegations are conclusory and fail to allege that Maestra, through either the Maestra or RISE directory, is an employment agency. Plaintiffs assert in conclusory fashion that Maestra runs directories "whose purpose is to connect musicians with employment in the New York theater industry." (*Id.* ¶ 128.) This allegation simply parrots the statutory definition without any factual allegations. Absent facts showing that Maestra undertook to procure employees or employment opportunities, Plaintiffs have failed to plausibly allege that Maestra is an employment agency under either the NYSHRL or NYCHRL. *Stoner v. Young Concert Artists, Inc.*, No. 11 Civ. 7279, 2012 WL 4471602, at *7 (S.D.N.Y. Sept. 26, 2012) ("Plaintiff's conclusory allegation that Defendant is an employment agency for the purposes of these statutes is part and parcel of the formulaic recitation of the elements of a cause of action that will not do") (quoting *Twombly*, 550 U.S. at 555), *aff'd in part, vacated in part, remanded in part*, 626 F.App'x 293 (2d Cir. 2015).

Plaintiffs' theory would impermissibly expand the definition of an "employment agency" to encompass virtually any organization that helps individuals develop professional connections or advance their careers. However, "merely providing users with access to employment opportunities" does not transform a directory or other networking agency into an employment agency. *See Gundogdu*, 2024 WL 1597781, at *2 ("Merely providing users with access to employment opportunities was not a significant degree of engagement in employment-related activities"). Accordingly, the NYSHRL and NYCHRL should be dismissed as a matter of law.

## V. Lynch's Discrimination Claims Under The New York Civil Rights Law Must Be Dismissed (Count VI)

Lynch contends that "Maestra [] [is] liable under the Civil Rights Law, §40-c, for the same reasons [it is] liable under the" NYSHRL. (AC ¶ 123.) Lynch's claim under the New York Civil Rights Law ("NYCRL") fails because it cannot stand alone in the absence of viable claims under the NYSHRL and NYCHRL. *See Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20 Civ. 3809, 2021 WL 2206486, at *45 (S.D.N.Y. June 1, 2021) (claims under the NYCRL "rise[] or fall[] in tandem" with the NYSHRL and NYCHRL "and need not be analyzed independently"); *see also Padmanabhan v. N.Y Inst. of Tech. Campus*, No. 18 Civ. 5284, 2019 WL 4572194, at *5 (S.D.N.Y. Sept. 20, 2019) ("The NYCLR § 40-c is analyzed together with the" NYSHRL). Accordingly, the NYCRL claim fails.

**CONCLUSION**

For the foregoing reasons, Maestra respectfully requests that this Court grant Maestra's motion to dismiss, enter judgment for Maestra, and that Maestra be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 18, 2026

DAVIS WRIGHT TREMAINE LLP

By: /s/Roy P. Salins

Roy P. Salins
Matteo Taraborrelli
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
roysalins@dwt.com
matteotaraborrelli@dwt.com
(212) 489-8230
Attorneys for Defendant Maestra Music, Inc.

**CERTIFICATION OF COMPLIANCE WITH WORD COUNT**

I hereby certify that the foregoing memorandum of law in support of Defendant Maestra Music, Inc.'s ("Maestra") motion to dismiss the amended complaint complies with Local Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. The memorandum of law contains, 6,542 words as calculated by the word processing system used to prepare the document, excluding the case caption, table of contents, table of authorities, and signature block.

Dated: New York, New York
September 18, 2026

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/Roy P. Salins

Roy P. Salins
Matteo Taraborrelli
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
roysalins@dwt.com
matteotaraborrelli@dwt.com
(212) 489-8230
Attorneys for Defendant Maestra Music, Inc.