**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN ALLIANCE FOR EQUAL RIGHTS and KEVIN LYNCH,

Plaintiff,

v.

MAESTRA MUSIC, INC.; ARTS IGNITE INC. d/b/a Musicians United for Social Equity (MUSE); and WICKED LLC,

Defendants.

Case No.: 26-cv-04645

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ARTS IGNITE'S MOTION TO DISMISS THE AMENDED COMPLAINT**

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

Ryan C. Chapoteau
Casey Katz Pearlman

ATTORNEYS FOR DEFENDANT ARTS IGNITE INC.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. PLAINTIFFS CANNOT FURTHER AMEND THEIR PLEADING THROUGH THE LYNCH DECLARATION OR THEIR OPPOSITION BRIEF ........ 2

II. PLAINTIFF LYNCH'S TITLE VII CLAIM IS TIME-BARRED ........ 4

III. PLAINTIFFS' SECTION 1981 CLAIMS FAIL ........ 8

IV. PLAINTIFFS' EMPLOYMENT AGENCY THEORIES FAIL UNDER TITLE VII, THE NYSHRL, AND THE NYCHRL ........ 11

A. Arts Ignite Is Not an Employment Agency Under Title VII ........ 11

B. The Liberal Construction of the NYSHRL and NYCHRL Does Not Save Plaintiffs' Employment Agency Claims ........ 13

V. PLAINTIFFS' INTERNSHIP AND ADVERTISING CLAIMS FAIL ........ 14

VI. DISMISSAL SHOULD BE WITH PREJUDICE ........ 15

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAER v. Fearless Fund*,
103 F.4th 765 (11th Cir. 2024) ....................11

*AAER v. Hisp. Scholarship Fund*,
No. 25-4207 (LLA), 2026 U.S. Dist. LEXIS 224197 (D.D.C. Sept. 30, 2026)....................8, 9

*Adam v. Obama for Am.*,
210 F. Supp. 3d 979 (N.D. Ill. 2016) ....................10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8

*Daniels v. Pipefitters' Ass'n Local Union No. 597*,
945 F.2d 906 (7th Cir. 1991) ....................9, 10

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 (2006)....................9

*Duverny v. Hercules Med. P.C.*,
No. 18-cv-07652 (DLC), 2020 U.S. Dist. LEXIS 37547 (S.D.N.Y. Mar. 3, 2020) ....................6

*Glaser v. Upright Citizens Brigade, LLC*,
377 F. Supp. 3d 387 (S.D.N.Y. 2019)....................10

*Gratz v. Bollinger*,
539 U.S. 244 (2003)....................9

*Haghpassand v. Reuters Am. Inc.*,
120 Fed. Appx. 859 (2d Cir. 2005)....................4

*Hollander v. Sears, Roebuck & Co.*,
450 F. Supp. 496 (D. Conn. 1978)....................10, 11

*Malone v. Pipefitters' Assn, Local Union 597*,
774 F. Supp. 490 (N.D. Ill. 1991) ....................10

*Moody v. Queens Ballpark Co., L.L.C.*,
No. 24-cv-6271 (SDE), 2026 U.S. Dist. LEXIS 155328 (E.D.N.Y. July 10, 2026) ....................10

*NYC Comm'n on Human Rights v. Boll*,
No. 40903/74, 1974 N.Y. Misc. LEXIS 2072 (Sup. Ct. N.Y. Cnty. Aug. 6, 1974) ....13

*Pavillion Agency v. Spitzer*,
9 Misc. 3d 626 (Sup. Ct. N.Y. Cnty. Aug. 3, 2005) ....14

*Richards v. Warner Music Grp.*,
No. 22 Civ. 6200 (DEH), 2024 U.S. Dist. LEXIS 175192 (S.D.N.Y. Sept. 25, 2024) ....3

*Rivers v. Roadway Express, Inc.*,
511 U.S. 298 (1994)....10

*Sabeniano v. Citibank, N.A.*,
No. 16-cv-1723 (AJN), No. 16-cv-1723 (AJN), 2020 U.S. Dist. LEXIS 250083 (S.D.N.Y. Aug. 14, 2020) ....7

*Scaglione v. Chappaqua Central School District*,
209 F. Supp. 2d 311 (S.D.N.Y. 2002)....12

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014)....15

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)....3

**Statutes**

42 U.S.C. § 2000e(c)....11

N.Y. Exec. Law § 292(2) ....13

N.Y. Exec. Law § 296(6) ....14

N.Y. Exec. Law § 296-c(1) ....14

**Rules**

Fed. R. Civ. P. 12(b)(6)....3

**Other Authorities**

29 C.F.R. § 1601.12(b) ....5

N.Y.C. Admin. Code § 8-102 ....13, 14

N.Y.C. Admin. Code § 8-107(6)....14

## PRELIMINARY STATEMENT[1]

Defendant Arts Ignite Inc. d/b/a Musicians United for Social Equity ("Defendant" or "Arts Ignite" or "MUSE") submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss (the "Motion").

Plaintiffs' Amended Complaint cannot survive Defendant's Motion – a fact underscored by Plaintiffs' submission of an improper eight-page declaration from Plaintiff Lynch together with more than twenty exhibits, totaling over 100 pages. A complaint cannot be amended through briefing or a declaration submitted in opposition to a motion to dismiss, yet that is precisely what Plaintiffs attempt in their Opposition (the "Opposition" or "Opp."). Standing on its own (and even in conjunction with the improper declaration and exhibits), the Amended Complaint fails to state a claim against Arts Ignite upon which relief can be granted.

Plaintiffs' Opposition also recasts their own allegations as Defendants' concessions. For example, Plaintiffs assert that "[a]ccording to Defendants" the selected participant had to commit 6-12 hours per week, and that "Defendants themselves said" the participant would perform various "duties" despite each of these purported admissions being supported solely by a citation to Plaintiffs' own Amended Complaint. See Opp. pp. 5, 29, 37, 43 (citing AC ¶¶ 15, 48, 61, 112). Allegations drafted by Plaintiffs' counsel do not become admissions by Defendants simply because Plaintiffs relabel them as such.

Plaintiffs go even further and assert that "Defendants do not deny their racial discrimination" and that MUSE "does not contest its role in the racial discrimination against Lynch." Opp. pp. 1, 10, 33. That is simply wrong. This Court should see past Plaintiffs' absurd conflation of a pleading standard with Arts Ignite supposedly making such a concession, especially

---

[1] The terms used herein are those defined in Arts Ignite's moving Memorandum of Law in support of its Motion (the "MOL").

when Plaintiffs' improper submissions disprove this very point. See Lynch Decl. Ex. 3 (Arts Ignite denying discrimination from the outset). Arts Ignite's decision to challenge the legal sufficiency of a complaint through a motion to dismiss is not an admission of anything. Plaintiffs know that and have resorted to making these misrepresentations in an attempt to have them overshadow Plaintiffs' baseless claims.

To refocus on the merits, the Opposition does not salvage the Amended Complaint's fatal deficiencies. As detailed in Defendant's MOL, Plaintiffs' Title VII claims fail because: (i) Plaintiffs claims are untimely and (ii) Plaintiffs do not establish Arts Ignite "procures" employment as an employment agency. Plaintiffs' Section 1981 claims fail because: (i) Plaintiffs have not identified an implicated contract or prospective contract, as the MUSE Privacy Policy is a notice applicable to every website visitor; (ii) Plaintiffs have not put forward any third-party contract that was impaired; (iii) the Music Director Experience stipend was not paid by Arts Ignite; and (iv) the individual selected for the Music Director Experience did not provide any services to Arts Ignite. Plaintiffs' NYSHRL and NYCHRL claims fare no better because: (i) like Title VII, Plaintiffs are unable to establish Arts Ignite acts as an employment agency; and (ii) Plaintiffs do not allege that any work was performed for Arts Ignite, or that the selected participant was doing anything at all in connection with Arts Ignite. The Opposition, Lynch declaration, and accompanying exhibits do nothing to change these flaws. Indeed, they only highlight that Plaintiffs are grasping at straws.

For the reasons set forth below, and those more fully stated in its initial moving papers, Arts Ignite's Motion should be granted in its entirety, with prejudice.

## ARGUMENT

### I. PLAINTIFFS CANNOT FURTHER AMEND THEIR PLEADING THROUGH THE LYNCH DECLARATION OR THEIR OPPOSITION BRIEF

Rather than stand by the Amended Complaint as pleaded, Plaintiffs submitted an eight-

page declaration and over 100 pages of exhibits (most of them web pages archived in September and October 2026, weeks after the Amended Complaint was filed) to amend their pleading without leave of Court. Such conduct is improper, and the narrative portions of Plaintiff Lynch's declaration, and the accompanying exhibits offered to supply new facts, should be disregarded.

On a motion to dismiss under Rule 12(b)(6), the Court's review is confined to the four corners of the pleading and documents incorporated by reference or integral to it, and "fact-based arguments raised in declarations that are not integral to a complaint are not properly considered[.]" *Richards v. Warner Music Grp.*, No. 22 Civ. 6200 (DEH), 2024 U.S. Dist. LEXIS 175192, at *6 (S.D.N.Y. Sept. 25, 2024). Nor may a plaintiff amend its complaint through its opposition brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Yet the Lynch declaration offers a litany of new information not contained in the Amended Complaint, including for the first time, allegations that Lynch was unrepresented when he filed his *pro se* complaint with the New York State Division of Human Rights ("NYSDHR") in July 2023, what he "thought" and "understood" about the relationship between Maestra and MUSE when he named only Maestra as the respondent, and that the EEOC gave his counsel "permission" to file a new charge that would become the "official" charge. *See* Lynch Decl. ¶¶ 5-6, 9-11. None of this is alleged or even referenced in the Amended Complaint. The submission of Plaintiff Lynch's declaration is an improper attempt to inject facts not contained in the Amended Complaint and amend it through an opposition brief. This is plainly improper and should be rejected by the Court. *See, Richards,* supra at *7 (declining to consider plaintiff's declaration because the information "look[s] beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken") (quotations omitted).

Plaintiffs attempt to justify these new submissions by pointing to Arts Ignite's references

to MUSE's website. Opp. p. 9. Yet, Arts Ignite cited only pages on which the Amended Complaint itself relies and are incorporated by reference, such as the Privacy Policy quoted at paragraph 75 of the Amended Complaint. *See* MOL p.8. Arts Ignite's references allowed under the law are a far cry from using declarant testimony and new materials to supply allegations the Amended Complaint does not contain.

## II. PLAINTIFF LYNCH'S TITLE VII CLAIM IS TIME-BARRED

As detailed in Defendant's MOL, Plaintiff Lynch untimely filed a charge of discrimination with the EEOC against Arts Ignite and, therefore, his Title VII claim against Arts Ignite is time-barred. The Amended Complaint alleges only that Lynch "filed an EEOC charge" and received a notice of right to sue on August 20, 2026. AC ¶ 92. That charge was filed, at minimum, 717 days after Plaintiff Lynch's August 2023 rejection from the Music Director Experience – more than double the 300-day limitations period. Motion pp. 14-15.

Plaintiffs now recast the claim as targeting MUSE's "ongoing discrimination" through its directory rather than Plaintiff Lynch's rejection from the Music Director Experience. Opp. pp. 23-24. But the Amended Complaint itself pleads that Lynch "suffered a completed legal violation at least in summer 2023, when he tried to create a profile in the MUSE employment directory" and MUSE did not approve it. AC ¶¶ 31, 35, 108. A refusal to admit, hire, or refer is a discrete act that triggers the limitations period when it occurs, and its continuing effects do not restart the clock. *See, e.g., Haghpassand v. Reuters Am. Inc.*, 120 Fed. Appx. 859, 862 (2d Cir. 2005) (subsequent refusal to admit employee to the work site "is simply the continuing effect of the discharge decision" and does not extend the 300-day filing period). Moreover, Plaintiffs' continuing-violation argument is directed exclusively at Maestra's RISE directory, not at Arts Ignite. Opp. p. 28. The only act alleged as to Arts Ignite occurred in summer 2023, nearly two years before

Lynch's August 17, 2025 charge.

Plaintiffs' relation-back, identity-of-interest, and equitable tolling arguments fare no better (Opp. pp. 24-28). Each depends on allegations found only in the Lynch Declaration, and therefore, as stated above, should not be considered. For example, in support of these arguments Plaintiff Lynch now states for the first time that he was unrepresented for his NYSDHR complaint, he has a supposed explanation of why he named only Maestra, and he supposedly obtained "permission" from the EEOC to file an "amended" charge. Opp. pp. 7-8, 24-27; Lynch Decl. ¶¶ 5-6, 10-11. Unlike the EEOC charge Arts Ignite submitted solely for the fact of its filing date (Motion p.15), Plaintiff Lynch's declaration is narrative testimony offered for the truth of its contents. The fact and date of an administrative filing may be judicially noticed; Plaintiff Lynch's account of his state of mind and the surrounding circumstances may not.

Even if considered, these allegations do not save the claim. Plaintiffs argue that the "Lawyer-drafted [EEOC] charge from 2025 'relate[s] back' to Lynch's pro se [NYSDHR] charge from 2023". Opp. p. 25. But the NYSDHR proceeding was captioned against Maestra alone, and Arts Ignite was never served and never responded. Lynch Decl. Ex. 1-H. By Plaintiffs' own assertions, the relation-back theory applies because it "amplifies the original allegations or adds conduct that grows out of the original subject matter." (Opp. p. 25). It does not apply for the addition of an entirely new respondent two years after the fact. Indeed, the regulation on which Plaintiffs rely permits amendments that "cure technical defects or omissions" or "clarify and amplify allegations made therein" neither of which would cover the addition of a new party. 29 C.F.R. § 1601.12(b).

Nor does it matter that the body of the *pro se* NYSDHR complaint purportedly "clearly covers both MUSE and Maestra." (Opp. pp. 25-26). A passing reference in the narrative of a charge

is not the same as naming a respondent. This is especially underscored by the fact that neither the NYSDHR nor the EEOC notified Arts Ignite or invited its response. And Plaintiffs' argument that the August 2, 2023 letter submitted demonstrates Arts Ignite had notice of the NYSDHR complaint is implausible. (Opp. p. 26; Lynch Decl. ¶ 7). Indeed, that letter predates the NYSDHR's August 11, 2023 filing date. On its face, that letter is a reply to Plaintiff Lynch's July 21, 2023 email and social media video, and not to any administrative complaint. Lynch Decl. Exs. 2, 3.

Plaintiffs' "identity of interests" theory also fails. It rests on the improper declaration, and, therefore, should not even be considered. However, even accepting those allegations, shared counsel and overlapping leadership do not establish an identity of interest. Dispositively, Plaintiffs' own authority supports the opposite conclusion they present. *Duverny v. Hercules Med. P.C.*, No. 18-cv-07652 (DLC), 2020 U.S. Dist. LEXIS 37547 (S.D.N.Y. Mar. 3, 2020) considered four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at *22-23 (internal citation omitted). These factors weigh against an identity of interest here. In *Duverny*, the named party "effectively captured" the unnamed party's interest in its position statement, and the two parties represented to the public that they were interchangeable. *Id.* Here, by contrast, Plaintiffs' own exhibits show that Maestra's founder has publicly stated that "Maestra and MUSE are two distinct organizations" with different "infrastructures," "programming and fundraising," and stakeholders (Lynch Decl. Ex. 8), and that the NYSDHR position statement was

submitted solely on behalf of Maestra and described MUSE as "an unrelated 501(c)(3) non-profit organization." Lynch Decl. Ex. 4. The first factor for "identify of interest" therefore weighs decisively against Plaintiffs by their own submissions. Lynch knew of MUSE's role when he filed (*i.e.*, he described MUSE in his administrative complaint and had applied to its directory) yet named only Maestra. Lynch Decl. Ex. 1-H. A proceeding of which Arts Ignite had no notice cannot serve as a basis for implicating it.

Equitable tolling is likewise unavailable. Plaintiffs seek two years of tolling because Lynch was unrepresented and confused about how to frame his claims. Opp. pp. 27-28. But equitable tolling is reserved for "rare and exceptional circumstances" and requires reasonable diligence throughout the period to be tolled. *See Sabeniano v. Citibank, N.A.*, No. 16-cv-1723 (AJN), No. 16-cv-1723 (AJN), 2020 U.S. Dist. LEXIS 250083, at *4 (S.D.N.Y. Aug. 14, 2020) (declining to toll for *pro se* plaintiff because "a pro se party's mistakes or incorrect beliefs regarding the law do not constitute exceptional circumstances warranting equitable tolling") (quotations omitted). Plaintiff Lynch's own NYSDHR complaint shows he was already aware of the administrative complaint process and of his theory regarding MUSE's role at the time.[2] Lynch Decl. Ex. 1-H. He did not file a "defective pleading." He simply filed a complaint against Maestra and elected not to name MUSE.

Finally, Arts Ignite's timeliness argument is not "too cursory to be preserved." (Opp. p. 23). The Motion raised untimeliness squarely, identified the 300-day limitations period and controlling authority, and showed from the public record that the charge was filed 717 days after the last alleged discriminatory act. Motion pp. 14-15. Plaintiff's argument that Arts Ignite is precluded in this Reply from responding to their theories of timeliness is inaccurate in both law and fact.

[2] And even accepting Plaintiff Lynch's statements, a two-year gap in which Lynch did nothing as to Arts Ignite – an entity he never named – is the opposite of diligence.

As demonstrated above, Plaintiff Lynch's improper declaration and exhibits, even if considered, do not support maintaining the Title VII claim against Arts Ignite. Moreover, Plaintiffs' assertion that Lynch would have been selected had he been a woman of color is a conclusion, not a well-pleaded fact. AC ¶ 37; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, Plaintiff Lynch's Title VII claim against Arts Ignite should be dismissed.

## III. PLAINTIFFS' SECTION 1981 CLAIMS FAIL

Arts Ignite's Privacy Policy is not a contract. Plaintiffs point to the user's "consent" to the collection of information, a "waiver" of foreign privacy rights, and MUSE's statement that it will use the information "consistent with" the policy. Opp. p. 12. Contrary to Plaintiffs' assertion, none of these reflect the required bargained-for exchange element. The policy discloses the website operator's practices; it is not a promise made to induce a return promise or performance. And the statement that MUSE will follow its own policy is not consideration, but just a description of the policy itself.[3]

Plaintiffs' authorities are inapposite on this point. In fact, none involve a Section 1981 claim or website terms giving rise to an employment relationship. The only case that comes close is AAER's own case, *AAER v. Hisp. Scholarship Fund*, No. 25-4207 (LLA), 2026 U.S. Dist. LEXIS 224197 (D.D.C. Sept. 30, 2026), but even that case supports dismissal. There, AAER argued that the Terms of Use and Privacy Policy on the Hispanic Scholarship Fund ("HSF") website were contracts sufficient to support a Section 1981 claim. The court held (as this Court should here) they "remain nothing more than contracts to use the 'Service' – that is, HSF's

---

[3] The Amended Complaint does not even allege that Plaintiff Lynch assented to the Privacy Policy. Yet again, Plaintiffs improperly seek to enlarge their claims through adding allegations to the Opposition while also distinguishing the Arts Ignite Privacy Policy from the Maestra Privacy Policy. Plaintiffs concede that Arts Ignite's Privacy policy contains no checkbox, click-through, or other manifestation of assent. Lynch Decl. Ex. 16; *cf.* Opp. p. 3. Plaintiffs' suggestion that MUSE would be "estopped" from denying the policy's contractual nature in some hypothetical future dispute does nothing to plead offer, acceptance, and consideration here. Opp. p. 12.

platforms." *Id.* at *33. The court explained:

> And any student, regardless of race, can use the Service on equal terms, including by accessing the website's public resources about navigating the college application process and finding scholarships. Because use of the Service is racially neutral – that is, because Student A and Student B may use the HSF website just as any other student can – these standard contracts cannot form the basis of a Section 1981 claim.

*Id.* Likewise, any person with internet access may use Arts Ignite's website consistent with the holding in *AAER.*[4] Its terms of access therefore cannot form the basis of a Section 1981 claim.

Plaintiffs' alternative theory that Arts Ignite impaired Plaintiff Lynch's ability to contract with unidentified third-party employers also fails because the Amended Complaint identifies no third-party contract or contracting opportunity Plaintiff Lynch lost. Plaintiffs assert that privity of contract is not required for purposes of a Section 1981 claim. Opp. pp. 15-16. Again, Plaintiffs attempt to conflate issues. While privity may not be required to state a Section 1981 claim, Section 1981 *does* require a plaintiff to identify a contractual relationship, existing or proposed, under which the plaintiff "has or would have rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). No such relationship is alleged and, in any event, Plaintiff Lynch concedes he was able to submit applications, including for the Music Director Experience. Plaintiffs' reliance on *Gratz v. Bollinger*, 539 U.S. 244 (2003), for the proposition that they need not identify any lost contract, Opp. pp. 17-18, conflates standing to seek prospective relief with the substantive elements of a Section 1981 claim. *Gratz* did not dispense with the requirement that a plaintiff identify a contractual relationship under which he would have rights.

Plaintiffs' remaining cases are entirely unrelated to Plaintiffs' arguments in their Opposition. While Plaintiffs attempt to use *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945

---

[4] Plaintiffs also conflate the Privacy Policy with MUSE Directory membership. The Privacy Policy governs how Arts Ignite uses information collected on the website and makes no promises with respect to Directory listing or the job board.

F.2d 906 (7th Cir. 1991) to support their privity argument, that case deals with an entity that explicitly describes itself "[a]s a provider of 'job leads.'" *Id.* at 914. And *Malone v. Pipefitters' Assn, Local Union 597*, 774 F. Supp. 490, 493 (N.D. Ill. 1991), involved the similar defendant who described itself as a provider of job leads and "assumed the responsibilities for a job referral network." *Id.* In *Moody v. Queens Ballpark Co., L.L.C.*, No. 24-cv-6271 (SDE), 2026 U.S. Dist. LEXIS 155328 (E.D.N.Y. July 10, 2026), the plaintiff alleged that the defendant's conduct impaired his ability to contract with a specific third party, the Queens Village Republican Club. No comparable impact is alleged here, as Plaintiff Lynch concedes he was able to apply to the Music Director Experience with or without MUSE Directory membership. AC ¶ 31.

Finally, in its most basic form, the Music Director Experience created no contractual relationship with Arts Ignite. Plaintiffs argue that a contract existed because the selected participant suffered a "detriment" by attending rehearsals and performing "duties" tied to the stipend. Opp. pp. 35-38. But, as alleged by Plaintiffs, Wicked paid the stipend, the activities took place at Wicked's rehearsals, and any benefit, to the extent there was some, flowed to Wicked. AC ¶¶ 15-16. Arts Ignite made no promises to, paid nothing to, and received nothing from the participant. Plaintiffs do not – because they cannot – plead any of that. The only "benefit" attributed to Arts Ignite of "the opportunity to tout [its] influence placing musicians on Broadway" (AC ¶ 60) is precisely the kind of incidental reputational benefit courts have found insufficient. MOL pp. 9-12 (discussing *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 985 (N.D. Ill. 2016), and *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 397 (S.D.N.Y. 2019)).

Plaintiffs' attack on *Hollander v. Sears, Roebuck & Co.*, 450 F. Supp. 496 (D. Conn. 1978), misses the point, as it is still persuasive authority. Opp. pp. 34-35. The 1991 amendments to Section 1981, as discussed in *Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994), extended Section 1981

to conduct occurring after a contract is formed; they did not alter the threshold question whether a contractual relationship exists at all – the question *Hollander* addressed and the one presented here. And the footnote *Adam* about paid positions has no bearing on a party that paid nothing. Motion p. 10 n.3.

Finally, Plaintiffs' fallback "contest" theory also fails. Plaintiffs argue that if the Music Director Experience was not a job or an internship, it "must have been a contest." Opp. p. 39. That is a false dichotomy: a mentorship and shadowing program is neither a job nor a contest, and Plaintiffs embrace Arts Ignite's observation that "the 'prize' was the experience itself." Opp. p. 41. That concession alone is fatal to Plaintiffs' claims. In any event, the only "prize" Plaintiffs identify, *i.e.*, the stipend and the opportunity to shadow Wicked's music team, was provided by Wicked and not Arts Ignite. AC ¶¶ 15-16, 61. The application requirements Plaintiffs identify, *i.e.*, an essay, application materials, and audition, were conditions for being considered, not performance bargained for by Arts Ignite. AC ¶ 62. And unlike *AAER v. Fearless Fund*, 103 F.4th 765, 775 (11th Cir. 2024), where the program was expressly styled a "Contest" with published rules that entrants accepted by entering, Plaintiffs identify no published contest rules; they point only to scattered advertisements and use of the word "winner." Opp. pp. 39-40.

## IV. PLAINTIFFS' EMPLOYMENT AGENCY THEORIES FAIL UNDER TITLE VII, THE NYSHRL, AND THE NYCHRL

### A. Arts Ignite Is Not an Employment Agency Under Title VII

Plaintiffs assert that Defendants "do not contest that their directories 'regularly' lead to employment." Opp. at 19. However, Arts Ignite's Motion contests exactly that. *See* Motion pp. 15-17. Nevertheless, more fundamentally, the question is not whether membership in an organization may "lead to" employment, but whether the organization "regularly undertak[es] . . . to procure employees for an employer or to procure for employees opportunities to work." 42 U.S.C. §

2000e(c). Plaintiffs' allegations about MUSE do not meet that standard.

Plaintiffs principally argue that MUSE "curates" its directory by reviewing and approving profiles. Opp. at 20–21; AC ¶ 97. But reviewing applications to join a professional network is not procuring employment for anyone. Accordingly, Plaintiffs' reliance on *Scaglione v. Chappaqua Central School District*, 209 F. Supp. 2d 311 (S.D.N.Y. 2002), is inapposite. There, the county personnel office was considered an employment agency because it was responsible for overseeing and administrating "all of the hiring procedures for civil service positions" in the county, and all civil service employers were required to "hire from the eligible and preferred lists" it provided. *Id.* at 312-317. Arts Ignite, by contrast, offers a membership directory that employers may or may not consult, and is not alleged to supply candidate lists for any position. Moreover, the court's observation in *Scaglione* that a plaintiff need only plead facts showing a defendant "at least may be" an employment agency (Opp. p. 19), does not lower the bar: a plaintiff's allegations must still plausibly show that the defendant regularly undertakes to procure employees or employment opportunities, and here they do not.

Plaintiffs' remaining arguments that MUSE's founders and leaders are accomplished professionals with their own hiring authority describes their jobs, not an undertaking by Arts Ignite to procure employment. (Opp. at 4-5, 21; AC ¶ 98). Plaintiffs' self-serving and unfounded allegation that MUSE's leaders "make personal references" when colleagues "reach out with staffing needs" (AC ¶ 50) describes, at most, occasional, informal recommendations, not the regular procurement of employees as a profession or business. MOL p. 16. Finally, that members have access to a job board and networking events (AC ¶ 50) describes member benefits that any professional association might offer, and not the act of actively procuring job opportunities. Further demonstrating Plaintiff's woefully deficient claims against Arts Ignite, every specific example in

the Amended Complaint of an employer using a directory to fill positions concerns Maestra, not MUSE.[5] AC ¶¶ 48-49.

### B. The Liberal Construction of the NYSHRL and NYCHRL Does Not Save Plaintiffs' Employment Agency Claims

Plaintiffs argue that the NYSHRL and NYCHRL must be construed liberally and that an entity may be an employment agency under those statutes. Opp. pp. 30-31. Liberal construction, however, does not permit a court to disregard statutory text, which requires that the entity "undertak[e] to procure employees or opportunities to work." N.Y. Exec. Law § 292(2); N.Y.C. Admin. Code § 8-102. "Procurement" requires an affirmative effort to obtain employment opportunities, and the Amended Complaint alleges only a networking directory, a job board, and mentorship programs.

Plaintiffs' cases illustrate the gap. In *NYC Comm'n on Human Rights v. Boll*, No. 40903/74, 1974 N.Y. Misc. LEXIS 2072, at *2-3 (Sup. Ct. N.Y. Cnty. Aug. 6, 1974), the respondent counseled "attendees on successful interviewing techniques; on the use of a broadcast letter instead of a resume; on specific individual difficulties encountered in job searches and render[ed] general advice and letter writing assistance" as well as "maintain[ed] a collection of job leads which he ma[de] available to the attendees; receiv[ed] notification of executive employment opportunities at the average rate of two letters a week from various sources, including recruiting firms and employers in New York City and counsel[ed] attendees as a result of the information received by him" and was "informed of the specific area and kind of employment sought by the attendees and solicit[ed] their names and addresses." *Id.* In stark contrast, Plaintiffs do not allege Arts Ignite does *any* of the activities conducted by Boll, for the simple reason that it does not. Plaintiffs citing

[5] The additional website content on which Plaintiffs now rely, such as MUSE's job-posting form and homepage, appears nowhere in the Amended Complaint and, in any event, does not help Plaintiffs. (Opp. pp. 5, 17, 20-21; Lynch Decl. Exs. 14, 21).

*Pavillion Agency v. Spitzer*, 9 Misc. 3d 626 (Sup. Ct. N.Y. Cnty. Aug. 3, 2005) is similarly irrelevant. In *Pavillion*, the agency consulted with domestic workers and "refer[ed] them to private residences for job interviews." *Id.* at 627. Again, Arts Ignite is not alleged to do *any* of these things.

Plaintiffs' related contention that MUSE is an employment agency under the NYCHRL because it "procure[s]" internships, Opp. p. 31, fares no better. The Amended Complaint alleges only that Broadway productions have "team[ed] up" with MUSE and Maestra to offer programs open to their members (AC ¶ 113) which is, at best publicizing another entity's program and not undertaking to procure employees or opportunities to work. And the "internship" option on MUSE's job-posting form (Opp. p. 31) is not alleged in the Amended Complaint at all, yet fails to sustain Plaintiff's claims against Arts Ignite for the same reasons.

## V. PLAINTIFFS' INTERNSHIP AND ADVERTISING CLAIMS FAIL

As stated in Arts Ignite's MOL, the primary issue with Plaintiffs' internship claims is simple: both the NYSHRL and the NYCHRL define an intern as a person who performs work "for an employer". N.Y. Exec. Law § 296-c(1); N.Y.C. Admin. Code § 8-102. Plaintiffs' argument that the work need only benefit the intern (Opp. pp. 45–46) does not address who the employer is. The Amended Complaint alleges that the participant's activities took place at Wicked's rehearsals and performances, under the supervision of Wicked's music team, and Wicked paid the stipend. AC ¶¶ 15–16, 135. No work for Arts Ignite is alleged; Arts Ignite's alleged role was to spread the word about the program and organize a selection committee. AC ¶¶ 17–19, 37. Plaintiffs cite no authority making such an organization the participant's employer. And Plaintiffs' new "aiding and abetting" theory is not pleaded and cannot be added through a brief. (Opp. p. 42 (citing N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6))). Regardless, aiding-and-abetting liability requires a primary violation, and there is none because the Music Director Experience was not an internship

or employment with any defendant (especially if Plaintiffs have voluntarily dismissed Wicked).

Plaintiffs' advertising claims under the NYSHRL and NYCHRL fail for the same reason. Plaintiffs merely repeat that the Music Director Experience was an internship (Opp. pp. 42-43), but these provisions reach only advertisements expressing a discriminatory limitation as to "employment as an intern" or "prospective employment," and the Music Director Experience was neither. Motion p. 23.

## VI. DISMISSAL SHOULD BE WITH PREJUDICE

Plaintiffs' assertion that Defendants "do not ask this Court to grant their motions to dismiss without leave to amend," is simply incorrect. (Opp. p. 46). Arts Ignite expressly sought dismissal with prejudice. MOL p. 24. Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Here, the Court already warned that if Plaintiffs amended "it is unlikely that plaintiffs will have a further opportunity to amend," Dkt No. 50, and Plaintiffs did so with full knowledge of the deficiencies Defendants already identified at the time. Those defects still remain: a website operator's privacy notice is not a contract, a networking organization is not an employment agency, and a program in which Arts Ignite neither paid nor employed the participant is not a contract or internship with Arts Ignite. Further, any amendment adding the contents of the improper declaration and exhibits would be futile for the reasons stated above. Accordingly, Plaintiffs' request for leave to amend should not be granted.

## CONCLUSION

For the foregoing reasons, and those set forth in its Motion, Arts Ignite respectfully requests that the Court dismiss the Amended Complaint in its entirety and with prejudice and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

Dated: November 4, 2026
New York, New York

By: s/Ryan C. Chapoteau
Ryan C. Chapoteau
Casey Katz Pearlman

ATTORNEYS FOR DEFENDANT ARTS IGNITE INC.

**Certification of Compliance with Word Count**

I hereby certify that, pursuant to this Court's Order dated October 21, 2026 (Dkt. No. 70), the foregoing Reply Memorandum of Law in Further Support of Defendant Arts Ignite's Motion to Dismiss Plaintiffs' Amended Complaint complies with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. The Memorandum of Law contains 4,983 words as calculated by the word processing system used to prepare the document, excluding the case caption, table of contents, table of authorities, and signature block.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

Dated: November 4, 2026
New York, New York

By: s/ Ryan C. Chapoteau
Ryan C. Chapoteau
Casey Katz Pearlman

ATTORNEYS FOR DEFENDANT ARTS IGNITE, INC.