UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS and KEVIN LYNCH,<br><br>Plaintiffs,<br><br>- against -<br><br>MAESTRA MUSIC, INC.; ARTS IGNITE INC. d/b/a MUSICIANS UNITED FOR SOCIAL EQUITY (MUSE); and WICKED LLC,<br><br>Defendants. | Case No. 26 Civ. 4645 (DLC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MAESTRA MUSIC, INC.'s MOTION TO DISMISS THE AMENDED COMPLAINT**

**DAVIS WRIGHT TREMAINE LLP**
Roy P. Salins
Matteo Taraborrelli
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
roysalins@dwt.com
matteotaraborrelli@dwt.com
(212) 489-8230
Attorneys for Defendant Maestra Music, Inc.

# TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. Plaintiffs' Section 1981 Claims Against Maestra Fail | 2 |
| A. Plaintiffs Still Fail To Plead Any Section 1981 Claim Against Maestra With Respect To The MD Experience | 2 |
| B. Relabeling The MD Experience As A "Contest" Does Not Create A Contract | 3 |
| C. Plaintiffs Fail To Allege Race Was But-For Cause Of Any Conduct | 5 |
| D. Plaintiffs' Allegations Concerning The RISE Website Terms Of Use Do Not Identify An Impaired Contractual Right | 5 |
| II. Lynch's Discrimination Claims Related To The MD Experience Under The NYSHRL And NYCHRL Fail | 6 |
| A. Plaintiffs Do Not Address Maestra's Argument That The MD Experience Was Not Employment | 6 |
| B. The MD Experience Was Not An Internship | 7 |
| C. The NYCRL Claim Fails With The NYSHRL Claim | 8 |
| III. Plaintiffs Fail To Allege That Maestra Is An Employment Agency | 8 |
| A. Maestra Is Not An Employment Agency Under Title VII | 8 |
| B. Maestra Is Not An Employment Agency Under The NYSHRL Or The NYCHRL | 10 |
| IV. The Dismissal Should Be With Prejudice | 11 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*African Diaspora Mar. Corp. v. Golden Gate Yacht Club*,
109 A.D.3d 204 (1st Dep't 2013) .......... 4

*Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*,
103 F.4th 765 (11th Cir. 2024) .......... 4, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8

*Beastie Boys v. Monster Energy Co.*,
983 F. Supp. 2d 338 (S.D.N.Y. 2013) .......... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*,
No. 20 Civ. 3809, 2021 WL 2206486 (S.D.N.Y. June 1, 2021) .......... 8

*Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989) .......... 6, 9, 10

*Cobaugh v. Klick-Lewis, Inc.*,
561 A.2d 1248 (Pa. Super. Ct. 1989) .......... 3

*Girard v. Int'l Ass'n of Approved Basketball Offs., Inc.*,
840 F. App'x 635 (2d Cir. 2021) .......... 9

*Gundogdu v. LinkedIn Corp.*,
No. 23-12706, 2024 WL 1597781 (11th Cir. Apr. 12, 2024) .......... 9

*Hollander v. Sears, Roebuck & Co.*,
450 F. Supp. 496 (D. Conn. 1978) .......... 8

*In re Refco Cap. Mkts., Ltd. Brokerage Customer Sec. Litig.*,
No. 06 Civ. 643, 2008 WL 4962985 (S.D.N.Y. Nov. 20, 2008), *aff'd sub nom. Cap. Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214 (2d Cir. 2012) .......... 11

*Leonard v. PepsiCo, Inc.*,
88 F. Supp. 2d 116 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88 (2d Cir. 2000) .......... 4

*N.Y.C. Comm'n on Hum. Rts. v. Boll*,
1974 WL 2796 (N.Y. Sup. Ct. Aug. 8, 1974) .......... 10

*Padmanabhan v. N.Y. Inst. of Tech. Campus*,
No. 18 Civ. 5284, 2019 WL 4572194 (S.D.N.Y. Sept. 20, 2019) ........................ 8

*Pavillion Agency, Inc. v. Spitzer*,
802 N.Y.S.2d 879 (Sup. Ct. 2005) ........................ 10

*Sargent v. New York Daily News, L.P.*,
42 A.D.3d 491 (2d Dep't 2007) ........................ 4

*Scaglione v. Chappaqua Cent. Sch. Dist.*,
209 F. Supp. 2d 311 (S.D.N.Y. 2002) ........................ 8

*Shapiro v. Prudential Theaters*,
328 N.Y.S.2d 28 (App. Term 1972), *aff'd*, 348 N.Y.S.2d 812 (App. Div. 1972) . 3

*Singh v. City of N.Y.*,
524 F.3d 361 (2d Cir. 2008) ........................ 7

*Stoner v. Young Concert Artists, Inc.*,
No. 11 Civ. 7279, 2012 WL 4471602 (S.D.N.Y. Sept. 26, 2012), *aff'd in part, vacated in part, and remanded*, 626 F. App'x 293 (2d Cir. 2015) ........................ 10

**Statutes**

42 U.S.C. § 1981 ........................ 1, 2, 5

42 U.S.C. § 2000e(c) ........................ 8

N.Y. Civ. Rights Law § 40-c ........................ 8

N.Y. Exec. Law § 292 ........................ 10

N.Y. Exec. Law § 296-c(1) ........................ 7

N.Y. Lab. Law § 511 ........................ 10

N.Y. Workers' Comp. Law § 2 ........................ 10

N.Y.C. Admin. Code § 8-102 ........................ 7, 10

Defendant Maestra Music, Inc. ("Maestra") respectfully submits this reply memorandum of law in further support of its motion to dismiss the amended complaint ("AC") (Dkt. No. 62, the "MTD") and in response to Plaintiffs' combined oppositions to Defendants' motions to dismiss the amended complaint (Dkt. No. 67, the "Opposition" or "Opp.").[1]

**PRELIMINARY STATEMENT**

Plaintiffs' claims against Maestra must be dismissed with prejudice because they fail again to plausibly allege that: (i) the MD Experience arose from a contractual relationship involving Maestra sufficient to state a claim under Section 1981 (MTD 5-13); (ii) the MD Experience, or any other alleged opportunities constitute employment relationships or internship opportunities with or through Maestra (MTD 14-17); and (iii) Maestra is an employment agency under any applicable law (MTD 18-21). Contrary to the false narrative in the Opposition, Maestra does not ask the Court to resolve any factual dispute. Instead, Maestra asks the Court to apply settled statutory thresholds regarding the facts necessary to allege a "contract" under Section 1981, and "internships" and "employment agencies" under Title VII, the NYSHRL and the NYCHRL. Namely, Plaintiffs still have not plausibly alleged facts sufficient to show that any of those terms apply against Maestra with respect to the three-week shadowing engagement at *Wicked* with *Wicked's* Music Director, which was paid by *Wicked*, and Maestra's directories that others search independently. Significantly, Plaintiffs concede – as they must – that: (i) their Title VII claim is not based on the MD Experience (Opp. 23-24); (ii) *Wicked*, not Maestra, is the entity obligated to pay the MD Experience participant's stipend and direct all activities of the MD Experience participant; and (iii) their NYCRL claim falls with the NYSHRL claim. (Opp. 23, 24, 37-38.)

---

[1] Undefined capitalized terms have the meanings assigned to them in its MTD. Citations to "Opp." refer to the Opp.'s internal page numbers. Maestra accepts the factual allegations of the AC as true solely for purposes of its MTD.

Moreover, the Opposition seeks to amend their complaint a second time through allegations improperly made in their Opposition and supporting affidavit. The Court, however, should focus on the actual allegations of the AC as set forth in Maestra's moving papers and this reply brief. Accordingly, the AC should be dismissed with prejudice as against Maestra.

## ARGUMENT

### I. Plaintiffs' Section 1981 Claims Against Maestra Fail

#### A. Plaintiffs Still Fail To Plead Any Section 1981 Claim Against Maestra With Respect To The MD Experience

Plaintiffs never allege that Maestra paid the MD Experience participant, promised anything to the MD Experience participant, or received anything of value from the MD Experience participant. (MTD 5-8.) Accordingly, a contract never existed between Maestra and the MD Experience participant, which precludes a Section 1981 claim. Moreover, Plaintiffs' Section 1981 claims fail against Maestra because it is an allegedly sex-based directory that does not allegedly make race-based decisions under the AC.

Plaintiffs' principal response to the MTD is that the "MD Experience was plausibly a contract – duties performed in exchange for money." (Opp. 31.) Plaintiffs further allege that the MD Experience constituted a contract because it was an employment or internship opportunity. (AC ¶¶ 59-61.) Plaintiffs also conflate *Wicked's* purported conduct with Maestra's. Plainly, even if the MD Experience involved a contract (it did not), that contract was with *Wicked* not with Maestra.[2] (MTD 7–8, n.3)

Plaintiffs argue that Defendants "offered" the MD Experience participant "a valuable experience, and they promised to pay that person a stipend." (Opp. 35-36.) The AC, however, alleges that *Wicked*, not Maestra, paid the $300 weekly stipend and that the practical playing and

[2] Plaintiffs have dismissed their claims against *Wicked* with prejudice. (Dkt. No. 71.)

conducting experience came from working one-on-one with *Wicked's* Music Director. (AC ¶¶ 15, 16, 61.) In fact, Plaintiffs contradict themselves in the Opposition, asking: "[D]o Defendants really suggest that, if the winner of the MD Experience had not shown up or refused to do anything *Wicked* required, *Wicked* still would have paid the winner the stipend?" (Opp. 38.) Plaintiffs' arguments concerning hourly rates are also irrelevant with respect to Maestra because Maestra paid nothing. (Opp. 36.)

Plaintiffs also now assert that Maestra received the benefit of a larger directory and was able to make use of the "prestige" associated with the MD Experience in its materials. (Opp. 38.) The AC, however, only alleges that Maestra was able "to tout [its] influence placing musicians on Broadway." (AC ¶ 60.) Of course, this does not constitute a benefit sufficient to establish a contractual relationship. *See Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 338, 350 (S.D.N.Y. 2013) (no consideration where any promotion benefit was merely incidental and where party arguing in favor of the existence of the contract did not argue there was a binding promise to provide promotion or website links).

Furthermore, the cases relied on by Plaintiffs are distinguishable. In both *Shapiro v. Prudential Theaters*, 328 N.Y.S.2d 28, 29 (App. Term 1972), *aff'd*, 348 N.Y.S.2d 812 (App. Div. 1972), and *Cobaugh v. Klick-Lewis, Inc.*, 561 A.2d 1248, 1250 (Pa. Super. Ct. 1989), the promotional benefit was commercial advertising that sold the defendants' goods or services. Unlike the allegedly incidental benefit here, the benefits in *Shapiro* and *Cobaugh* were direct, concrete marketing returns to for-profit businesses.

### B. Relabeling The MD Experience As A "Contest" Does Not Create A Contract

Plaintiffs' alternative "contest" theory rests on a false dichotomy: "If Defendants are right that the MD Experience was not a job or even an internship, then it must have been a contest."

(Opp. 39.) Plaintiffs cite no authority for the proposition that every selective opportunity that is not employment is, by default, a contest giving rise to a contract. And, although Plaintiffs refer to the promotional materials of the MD Experience as advertisements, (Opp. 6, 42), they do not address "[t]he general rule [] that an advertisement does not constitute an offer." *Leonard v. PepsiCo. Inc.*, 88 F. Supp. 2d 116, 122 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88 (2d Cir. 2000).

Plaintiffs also overstate the application materials. Plaintiffs assert that applicants submitted "essays and other audition pieces" and played "a musical number." (Opp. 40–41.) But materials incorporated into Plaintiffs' exhibits show a form requesting the applicant's name, directory membership information, reasons for wanting to participate, a resume, and references. They do not contain official contest rules, an entry fee, a rights grant, an audition requirement, or any promise by Maestra to be bound to applicants.

Plaintiffs further contend that the distinctions Maestra drew between the MD Experience and the contests in *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765 (11th Cir. 2024), *African Diaspora Mar. Corp. v. Golden Gate Yacht Club*, 109 A.D.3d 204 (1st Dep't 2013), and *Sargent v. New York Daily News, L.P.*, 42 A.D.3d 491 (2d Dep't 2007), do not "matter under the law of contracts." (Opp. 40.) On the contrary, those distinctions go to the heart of whether a contract existed. In *Fearless*, the program was expressly governed by official rules declaring that "BY ENTERING THIS CONTEST, YOU AGREE TO THESE OFFICIAL RULES, WHICH ARE A CONTRACT," and entrants conferred valuable rights on the sponsor, including the use of their names, likenesses, and submissions. *Fearless*, 103 F.4th at 769-70; MTD 9-10. In *African Diaspora*, a detailed protocol set out eligibility requirements, procedures, deadlines, and a $25,000 entry fee, and the organizer's reciprocal duties were "definite and certain." 109 A.D.3d at 211-12; MTD 11. Plaintiffs ignore *African Diaspora* and *Sargent*, and they identify no comparable rules,

entry fee, or definite reciprocal obligations here. Finally, Plaintiffs cannot assert that, like *Fearless*, the MD Experience "was entirely closed to white males" where Lynch was able to successfully apply, and have it reviewed. (Opp. 40; AC ¶¶ 17, 32, 37.)

### C. Plaintiffs Fail To Allege Race Was But-For Cause Of Any Conduct

Plaintiffs' Section 1981 claim fails because they do not allege that any conduct by Maestra was the but-for cause of the alleged discrimination or from any race-based criteria. (MTD 12.) Rather, the only race-based criteria in the AC are those Plaintiffs attribute to MUSE, not Maestra. (AC ¶ 72.) In their Opposition, Plaintiffs assert "Defendants are responsible for their joint decision to make membership in MUSE's directory… an eligibility requirement for the MD Experience." (Opp. 33.) Of course, Plaintiffs fail to recognize their admission that Lynch was able to apply to the MD Experience using his Maestra credentials and his application was reviewed. (AC ¶¶ 17, 32, 37.) In any event, there are no race-based factual allegations against Maestra. Therefore, race cannot have been a but-for cause of any illegal conduct under Section 1981.

### D. Plaintiffs' Allegations Concerning The RISE Website Terms Of Use Do Not Identify An Impaired Contractual Right

Plaintiffs' Section 1981 claim against Maestra with respect to the RISE website should be dismissed because it does not identify an impaired contractual right. (MTD 13-14.) Plaintiffs misrepresent that "Maestra doesn't contest that its 'Terms of Use and Privacy Policy' for RISE are contractual." (Opp. 11.) In reality, Maestra assumed the point, *arguendo*, to explain that even if the Terms of Use and Privacy Policy constitute a contract, Plaintiffs identify no right under them that was impaired. (MTD 13.) The Opposition does not cure that defect. Indeed, Plaintiffs' description of the Terms of Use is limited to an indemnification provision, a choice-of-law clause, a forum-selection clause, and a license permitting Maestra to use information members provide. (Opp. 3, 11; AC ¶¶ 83-84.) None of those provisions promises referrals, interviews, employment

opportunities, visibility to any particular employer, or any search functionality. (MTD 13.) Only as part of their Opposition – but not the AC – do Plaintiffs contend that being listed on RISE "is the key benefit" of the terms. (Opp. 14.) Plaintiffs admit, however, that Lynch is listed on RISE. (AC ¶ 47.)

Plaintiffs wrongly claim that Maestra "does not respond" to their theory that RISE impairs Lynch's ability to contract with third-party employers. (Opp. 16.) On the contrary, Maestra argued that Plaintiffs fail to plausibly allege but-for causation because the AC does not identify a single employer that utilized the challenged filter to exclude Lynch from consideration, a specific position for which he was rejected, a search in which his profile otherwise would have appeared, or a contract that he likely would have obtained absent the challenged functionality – allegations "insufficient to plausibly establish that any conduct by Maestra was the but-for cause of a lost contractual opportunity." (MTD 14.) The Opposition does not effectively address this argument and the false premise that Maestra did not respond to this theory should be disregarded.

## II. Lynch's Discrimination Claims Related To The MD Experience Under The NYSHRL And NYCHRL Fail

### A. Plaintiffs Do Not Address Maestra's Argument That The MD Experience Was Not Employment

In its MTD, Maestra demonstrates that the AC fails to allege that the MD Experience participant received sufficient remuneration to establish an employment relationship and that the factors set forth in *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), weigh against employment. (MTD 14-16.) Plaintiffs do not respond to any of these arguments and defend their state and city law claims solely on the incorrect theory that the MD Experience was an internship. (Opp. 41-46.)

### B. The MD Experience Was Not An Internship

The NYSHRL defines an intern as a person who "performs work for an employer for the purpose of training," N.Y. Exec. Law § 296-c(1), and the NYCHRL likewise defines an intern as "an individual who performs work for an employer on a temporary basis." N.Y.C. Admin. Code § 8-102; MTD 17. Plaintiffs agree that "intern" is a defined term and that the question is whether the participant performed "work" within those definitions. (Opp. 43.)

Plaintiffs nevertheless contend that, because the statutes describe work that provides training and experience "for the benefit of the person performing the work," there is "no requirement that it also be 'for the benefit of the employer.'" (Opp. 45 (quoting N.Y. Exec. Law § 296-c(1)(c)(2)).) That reading defies the text because those provisions describe an intern's training-oriented work; they do not eliminate the threshold requirement that the individual "perform[] work for an employer." N.Y. Exec. Law § 296-c(1).

Moreover, Maestra does not contend that interns must be employees. (Opp. 44-45.) Because the statutes do not define "work," Maestra applied its settled meaning: "physical or mental exertion . . . controlled or required by the employer," turning on "whether the time is spent predominately for the employer's benefit or for the employee's." *Singh v. City of N.Y.*, 524 F.3d 361, 367 (2d Cir. 2008); MTD 17. Plaintiffs offer no alternative. Under their reading, any masterclass or shadowing day would be an "internship."

Indeed, the facts alleged in the AC describe training, not work: observing rehearsals and performances, studying a keyboard book, and receiving one-on-one instruction from *Wicked*'s Music Director. (AC ¶¶ 15, 112, 135; MTD 17.) Plaintiffs' emphasis on "duties," "working with the Music Director," and "intensive" (Opp. 43) does not transform instruction into work, and the prior-experience requirement (Opp. 43-44; AC ¶ 39) shows only selectivity. These allegations

describe a student observer, not an intern. *See Hollander v. Sears, Roebuck & Co.*, 450 F. Supp. 496, 504 (D. Conn. 1978); MTD 17-18.

### C. The NYCRL Claim Fails With The NYSHRL Claim

Plaintiffs agree that Section 40-c of the NYCRL is analyzed together with, and rises or falls with, the NYSHRL. Opp. 41-42; MTD 21; *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20 Civ. 3809, 2021 WL 2206486, at *45 (S.D.N.Y. June 1, 2021); *Padmanabhan v. N.Y. Inst. of Tech. Campus*, No. 18 Civ. 5284, 2019 WL 4572194, at *5 (S.D.N.Y. Sept. 20, 2019). Because the NYSHRL claim fails, Count VI must be dismissed as well.

## III. Plaintiffs Fail To Allege That Maestra Is An Employment Agency

### A. Maestra Is Not An Employment Agency Under Title VII[3]

Title VII defines an employment agency as an entity "regularly undertaking with or without compensation to procure employees for an employer or to procure for employee's opportunities to work for an employer." 42 U.S.C. § 2000e(c). Plaintiffs argue that they need only allege facts from which the Court can infer that Maestra "at least may be" an employment agency. (Opp. 19 (quoting *Scaglione v. Chappaqua Cent. Sch. Dist.*, 209 F. Supp. 2d 311, 316 (S.D.N.Y. 2002)).) Plaintiffs, however, ignore that their allegations must still be plausible under *Iqbal*. And, *Scaglione* illustrates what Plaintiffs lack: there, prospective employers were required to "hire from the eligible and preferred lists the defendant [was] responsible for providing." (MTD 19 at n.7 (quoting *Scaglione*, 209 F. Supp. 2d at 317).)

Plaintiffs quote *Scaglione*'s reference to an entity "deciding what names are on the lists," but they ignore the fact that Maestra's directory does not require third parties to hire from contacts listed on the directory, and they do not allege a comparable limitation on potential employers' use

---

[3] Plaintiffs admit that "Lynch's Title VII claims involve[d] not his rejection from the MD Experience." (Opp. 24.) As discussed in Maestra's moving papers, that portion of any Title VII claim is time-barred. (MTD 18.)

of the Maestra or RISE directories. (Opp. 20.) Rather, Plaintiffs allege that: (i) employers search Maestra's directories on their own; (ii) employers "frequently us[e] the Maestra Directory when looking for musicians"; (iii) hiring agents and music directors use Maestra to identify musicians; and (iv) a dozen hiring managers "pledged" to begin their searches by consulting RISE. (Opp. 5, 19-20; AC ¶¶ 48-49, 98.) Each of these allegations describes potential employers independently choosing to search a directory and deciding for themselves whom to contact and whom to hire. (MTD 19.) As Maestra explained, the AC is devoid of allegations that Maestra identifies candidates for specific positions, recommends individuals to employers, screens applicants on behalf of employers, submits candidates for employment, negotiates hiring decisions, or otherwise participates in the employment relationship between third parties. (*Id.*) Accordingly, the AC fails to allege that Maestra is an employment agency under Title VII.

Moreover, Plaintiffs fail to distinguish *Gundogdu v. LinkedIn Corp.*, No. 23-12706, 2024 WL 1597781 (11th Cir. Apr. 12, 2024), by arguing that the Eleventh Circuit resolved that appeal on forfeiture grounds. (Opp. 22.) The court, however, stated that "merely providing users with access to employment opportunities" is not "a significant degree of engagement in employment-related activities." *Id.* at *2. That rationale applies squarely here.

Finally, the AC fails to allege that any of the opportunities purportedly available through the directories involve an employment relationship because the AC does not address the remuneration threshold or allege facts satisfying the *Reid* factors. (MTD 19 (citing *Girard v. Int'l Ass'n of Approved Basketball Offs., Inc.*, 840 F. App'x 635, 639 (2d Cir. 2021)).) Plaintiffs attempt to avoid the *Reid* factors by referencing that the New York Labor Law and New York Workers' Compensation Law treat professional musicians as employees. (Opp. 20 (citing N.Y. Lab. Law §

511 and N.Y. Workers' Comp. Law § 2).) Plaintiffs, however, do not allege facts addressing the *Reid* factors for any identified opportunity relevant to Maestra.

### B. Maestra Is Not An Employment Agency Under The NYSHRL Or The NYCHRL

The NYSHRL and the NYCHRL define an "employment agency" as "any person undertaking to procure employees or opportunities to work." N.Y. Exec. Law § 292; N.Y.C. Admin. Code § 8-102. Plaintiffs' allegation that Maestra operates directories "whose purpose is to connect musicians with employment in the New York theater industry" insufficiently parrots the statutory definition. (AC ¶ 128; MTD 20.) As courts in this district have held, a "conclusory allegation that Defendant is an employment agency for the purposes of these statutes is part and parcel of the sort of formulaic recitation of the elements of a cause of action [that] will not do." *Stoner v. Young Concert Artists, Inc.*, No. 11 Civ. 7279, 2012 WL 4471602, at *7 (S.D.N.Y. Sept. 26, 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)), *aff'd in part, vacated in part, and remanded,* 626 F. App'x 293 (2d Cir. 2015). Plaintiffs Opposition ignores *Stoner*.

Plaintiffs principally rely on state-law authority, *N.Y.C. Comm'n on Hum. Rts. v. Boll*, 1974 WL 2796, (N.Y. Sup. Ct. Aug. 8, 1974) and *Pavillion Agency, Inc. v. Spitzer*, 802 N.Y.S.2d 879 (Sup. Ct. 2005). Those cases, however, are easily distinguished. In *Boll*, the respondent "counsel[ed] and guide[d]" individuals "on successful interviewing techniques; on the use of a broadcast letter instead of a resume; on specific individual difficulties encountered in job searches and render[ed] general advice and letter writing assistance to the said group." *Boll*, 1974 WL 2796, at *1. Moreover, the agency would "counsel[]" individuals on information he received regarding the job market. Similarly, the defendant in *Pavillion* would refer individuals "to private residences for job interviews based upon the individual needs of a family or homeowner." *Pavillion*, 802 N.Y.S.2d at 881. The AC does not allege similar facts regarding the Maestra or RISE directories.

## IV. The Dismissal Should Be With Prejudice

The Court should not permit Plaintiffs to file another amended complaint. Given the lengthy factual allegations of the AC, it is clear Plaintiffs have had knowledge of the relevant facts for a sufficient time to craft a viable complaint. Any second amendment to the complaint would be the third version Plaintiffs have filed in this matter. Plaintiffs have had more than a full opportunity to state their claims, and their numerous failures should not be rewarded anymore – especially not at the continued expense of Maestra who has been providing them a roadmap to survival each time it challenges their pleading. Indeed, the Court acknowledged these facts when it warned that further amendment was unlikely. (Dkt. Nos. 50, 55.) The Court should instead draw a negative inference from Plaintiffs' repeated inability to plead actionable claims and find a further amendment to be futile. *See In re Refco Cap. Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643, 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) (drafting a complaint is not "an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the court over a rhetorical net until a viable complaint emerges") (citation omitted), *aff'd sub nom. Cap. Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214 (2d Cir. 2012).

## CONCLUSION

For the foregoing reasons, as well as those set forth in its MTD, Maestra respectfully requests that the Court grant its MTD, dismiss the AC as against Maestra in its entirety with prejudice, enter judgment for Maestra, and grant Maestra costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 4, 2026

DAVIS WRIGHT TREMAINE LLP

By: /s/Roy P. Salins
Roy P. Salins
Matteo Taraborrelli
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
roysalins@dwt.com
matteotaraborrelli@dwt.com
(212) 489-8230
Attorneys for Defendant Maestra Music, Inc.

**CERTIFICATION OF COMPLIANCE WITH WORD COUNT**

I hereby certify that the foregoing reply memorandum of law in further support of its motion to dismiss the amended complaint complies with Local Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. The memorandum of law contains 3,435 words as calculated by the word processing system used to prepare the document, excluding the case caption, table of contents, table of authorities, and signature block.

Dated: New York, New York
November 4, 2026

DAVIS WRIGHT TREMAINE LLP

By: /s/Roy P. Salins

Roy P. Salins
Matteo Taraborrelli
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
roysalins@dwt.com
matteotaraborrelli@dwt.com
(212) 489-8230
Attorneys for Defendant Maestra Music, Inc.